Smith v. City of Omaha.

GEORGE W. SMITH ET AL., APPELLANTS, V. CITY OF OMAHA ET AL., APPELLEES.

FILED DECEMBER 16, 1896. No. 7990.

1. **Municipal Corporations:** SPECIAL ASSESSMENTS. It is a rule of construction peculiarly applicable to special assessments authorized by section 6, article 9, of the constitution that the record must show affirmatively a compliance with all the conditions essential to a valid exercise of the taxing power, and that the omission of such facts will not be supplied by presumptions.

2. ———: ———: AWARD OF DAMAGES. An award of damage pursuant to provision of section 116, charter of the city of Omaha (Compiled Statutes, ch. 12a), upon the change of an established grade, should show affirmatively that the appraisers appointed for such purpose took into consideration the benefits thereby accruing to the prop-

erty in question and that the award or finding so made represents the difference or balance in favor of the property owner.

3. ———: ———. Both section 6, article 9, constitution, 1875, and the charter of the city of Omaha by implication limit the amount of assessment for local improvements to the special benefits severally accruing to the lots or parcels of land thereby affected. (*Cain v. City of Omaha*, 42 Neb., 120.)

APPEAL from the district court of Douglas county. Heard below before AMBROSE, J.

*E. W. Simeral* and *George W. Doane*, for appellants.

*W. J. Connell*, contra.

POST, C. J.

This was an action in the district court for Douglas county by George W. Smith, John A. Creighton, Alvin Saunders, James Neville, James J. Brown, Abraham Martin, Eliza A. Towle, David T. Mount, Samuel R. Johnson, Nathan B. Falconer, Mary C. Denise, Gilbert M. Hitchcock, Leah Rosewater, and Emily J. Briggs, the purpose of which was to perpetually enjoin the collection by the city of Omaha of certain special assessments hereafter more particularly described. William Bushman and Charles G. Davidge, who claim an interest in the subject of the controversy in common with the plaintiffs, were, on motion, permitted to intervene and join in the prosecution of the cause, which resulted in a decree for Saunders, Rosewater, and Falconer as prayed, and a dismissal of the several bills for want of equity, so far as they concern the other plaintiffs and intervenors, and from which an appeal has by the unsuccessful parties been prosecuted to this court. The material facts disclosed by the pleadings and proofs are as follows: The council of the city of Omaha, in the year 1890, by ordinance, provided for a change of the grade of Douglas street, between Sixteenth and Twentieth streets, pursuant to which the mayor, with the consent of the city council, in due form appointed three disinterested free-

holders, to determine and assess the damage to property owners on account of such change of grade. The appraisers mentioned, having qualified by taking and subscribing an oath to faithfully and impartially discharge the duties of their said offices, proceeded from a personal examination of the property affected by such change of grade to find and award damages resulting therefrom to twenty separate lots, in the aggregate sum of $32,012, but without reference of any character to the other lots or subdivisions thereof so affected. The council, upon the approval of the return or award aforesaid, and while sitting as a board of equalization as provided by the city's charter, proceeded to apportion the damages thus awarded to the several lots and parcels of land adjudged to be benefited by said improvement. An ordinance was subsequently adopted by which, after a recital of the facts herein stated, it is provided: "The cost of damages for the change of grade of Douglas street, in the city of Omaha, from Sixteenth street to Twentieth street, said damages being the sum of $32,057, be, and the same is hereby, levied according to special benefits by reason of said change of grade upon the following lots" found to be benefited by the proposed improvement, some two hundred in number, with the amount assessed against each thereof. There was, as already intimated, except as to Saunders, Rosewater, and Falconer, no finding of damage in favor of any of the plaintiffs, nor is there any finding, unless by implication, respecting special benefits to the lots found to be damaged by such change of grade. The report of the appraisers, to which reference has been made and which is the basis of the subsequent action by the city council, is as follows: "The undersigned, three disinterested freeholders of the city of Omaha, having been duly appointed by the mayor, with the approval of the council, to assess the damage to the owners, respectively, of property and land affected by the change of grade declared to be necessary by ordinance No. 136, on Douglas street from Sixteenth to Twentieth street, having duly

accepted said appointment, and qualified as required by law, do hereby certify and report that we have faithfully and impartially discharged the duties of our appointment, and after careful personal examination of said property and land, and consideration of the damage to said owners, respectively, by reason of such change of grade, we have and do assess as the damage to said owners respectively the sums set opposite each of said owner's names as shown by schedule B hereto attached, and which we refer to as part of this our assessment and report."

The form of the exhibit mentioned in the foregoing report is sufficiently illustrated by the first entry appearing thereon, viz.: "Lillian Jacobs, lot 7, block 108, $690.00." The ascertainment of damage in the manner here indicated, upon the establishment or change of grade of streets, avenues, or alleys, is authorized by section 116 of the charter of the city of Omaha (Compiled Statutes, ch. 12a, entitled "Cities of the Metropolitan Class"), viz.: "The mayor and council of any city governed by this act shall have power by ordinance to establish the grade of any street, avenue or alley in the city, and when the grade of any street, avenue or alley shall have been heretofore established, or when the grade of any street, avenue or alley shall be established and approved as herein provided the grade of no street or part of a street shall be changed unless the consent in writing is first obtained of the owners of lots or lands abutting upon the street or part of street where such change of grade is to be made, who represent a majority of the feet front thereon, and not then until the damages to property owners which may be caused by such change of grade shall have been assessed and determined by three disinterested freeholders who shall be appointed by the mayor and council for that purpose, who shall make such appraisement, taking into consideration the benefits, if any, to such property, and file their report with the city clerk; and the amount of damages so assessed shall be tendered to such property

owners or their agents as soon as the funds for that purpose are obtained from the assessments of such damages upon property benefited by reason of such change of grade, or otherwise realized; *Provided*, That no street, avenue or alley shall be worked to such change of grade until the damages so assessed shall be tendered to such property owners or their agents." Authority to assess the damage occasioned by improvements of the character here involved against the property specially benefited thereby, is conferred upon the city council by section 119 of the chapter above cited, viz.: "The council shall have power and is hereby authorized to assess the damages awarded or recovered for grading, change of grade, or for the appropriation of private property, upon the lots and lands benefited, which shall abut or be adjacent to the street, avenue or alley graded, or for the opening, extending or widening of which private property shall be appropriated, or on which the grade shall be changed, and in the case of appropriation of land for widening of a street, avenue or alley, the council may consider, for the purpose of determining benefits and equalizing such assessment, whether any portion of the street, avenue or alley had been previously donated from any lot or piece of land abutting or adjacent thereto."

The primary question suggested by the record and arguments of this cause is the sufficiency of the findings of damages and benefits as the basis of the subsequent proceedings which resulted in the assessments complained of,—in brief, the jurisdiction of the city council to assess against the property of appellants the amount of the alleged special benefits. It is a recognized rule of construction, especially applicable to actions of this character, that those things which the law regards as the substance of the proceeding cannot by the courts be treated as immaterial, that the record must show affirmatively a compliance with all the conditions essential to a valid exercise of the taxing power, and that their omission will not be supplied by presumptions. The following, among

the many cases in point, sufficiently illustrate the principle above stated: In *State v. Mayor of Paterson*, 37 N. J. Law, 380, the mayor and aldermen were, upon the grading of any street, required to appoint three impartial assessors to assess the cost thereof against the property fronting upon such street, "in proportion to the benefit received." In holding the assessment void for the failure to show affirmatively that the appraisers had taken into consideration special benefits to the property involved, the supreme court say: "But if these persons had been duly appointed and qualified to act in the premises, there is such infirmity in the assessment itself that it cannot be sustained. The assessors do not in their report certify that they imposed the burden in proportion to the benefits received, nor does it in anywise appear that they were governed by a correct principle. On the contrary, their return shows that they arbitrarily assessed each lineal foot of frontage in an equal amount." In *Village of Passaic v. State*, 37 N. J. Law, 538, the court of errors and appeals, in construing the same statute, say: "It follows that it is essential to the validity of any assessment under this provision of the charter that it affirmatively and unequivocally appear that the assessment does not exceed the benefit. The intendment made in favor of the statute will not, on established principle, be extended to the report of the assessment. In this case it does not appear that the assessment upon the railroad company was not in excess of the benefits." (See, also, *State v. Inhabitants of West Orange*, 39 N. J. Law, 453.) In *Merritt v. Village of Portchester*, 71 N. Y., 309, an oath by the appraisers to discharge their duties according "to the best of their ability" was held not a compliance with the statute requiring them to be sworn "to faithfully and fairly discharge their duties," etc., and which ruling is cited with approval in *Stebbins v. Kay*, 123 N. Y., 31. In *Chamberlain v. City of Cleveland*, 34 O. St., 551, the assessment upon "property benefited" was held void on the ground that it failed to show that the special benefits

were valued at all, or if valued, that they were assessed in proportion to the benefit which each lot received. In the case last cited we find the rule thus stated by Gilmore, C. J.: "It is essential to the validity of the assessment that the proceedings by which it is made must show upon their face that the requirements of the law have been substantially complied with, and that the restrictions imposed by law upon the exercise of the power have been observed in such a way that the owner of the lot assessed has had the benefit of the protection they are intended to give. * * * Presumption, if permitted in favor of the validity of any part of the proceedings, cannot be permitted to supply the essential elements of a valid assessment that are wanting here." In *Lieberman v. City of Milwaukee,* 89 Wis., 336, it was by statute made the duty of the board of public works, before ordering any work to be done by abutting owners upon the establishment of a grade, to "view the premises and consider the amount proposed to be made chargeable against said several lots or pieces of land, and the benefits which, in their opinion, will actually accrue to the owners of the same in consequence of such improvement," and to assess against the same "the amount of benefits which those lots or pieces will severally, in the opinion of the board, derive, * * * taking into consideration in each case any injury which, in the opinion of the board, may result to each lot, * * * and in case the benefits, in their opinion, amount to less than the cost of the improvement, the balance shall be paid out of the ward funds of the ward or wards in which such improvement is made; and said board shall indorse their decision and assessment in every case on the estimate of the cost of such improvement filed in their office." By the following section it was made the duty of the board of public works, upon the change of an established grade, "at the time of making their assessment as provided in the preceding section, to consider, determine, and assess against the lots which they may deem benefited by the proposed improvements,

to the amount of such benefits, the damages, costs, and charges, including the cost of such improvement, arising from such alteration of grade, to the owner of any lot * * * which may be affected or injured in consequence thereof, taking into consideration in each case any advantages and benefits which may be conferred thereby upon such lot, * * * in common with the other property on the street affected by such grade, and the excess of said damages, costs, and expenses over the benefits assessed, as provided in the preceding section, shall be paid out of the ward funds." The court, by Pinney, J., construing the foregoing provisions, say: "The law proceeds upon the basis that assessments for such improvements are to be limited to the benefits conferred on the property, to be modified and affected by a proper allowance or award of damages, costs, and charges arising from the change of grade, by way of compensation therefor, and the particular provisions of the section must be construed with reference to this manifest purpose. It is plain that there are two assessments provided for in a case like the present, though both may be well combined in the same document. It is essential to the validity of any such assessment that it shall clearly appear upon its face that the provisions of law for the benefit of the lot owner have been observed, * * * not only the question of benefits and injury, but the question of damages, costs, and charges by way of compensation for the alteration of the grade."

There is one apparent difference between the requirements of the city's charter in this case and the statutes involved in the cases cited, since the legislature appears, whether wisely or unwisely we are not called upon to determine, to have provided for the ascertainment of damage to private property by appraisers selected for that purpose, and for the apportionment by the city council of the damage so awarded to the several lots adjudged to be benefited by the contemplated improvement. In addition to the provisions quoted from section

119, section 85, among other things, declares that "in all cases before any special taxes that may be levied, except for constructing wood sidewalks, shall be finally levied, it shall be the duty of the council to sit as a board of equalization for the purpose of equalizing any such proposed levy of special taxes or assessments, * * * and at such session it shall hear all complaints that the owners of property so to be assessed and taxed may make, and it shall be its duty to equalize any such assessment by correcting any errors therein, and thereupon such assessments and special taxes shall be finally made." But whatever may be the true interpretation of sections 85 and 119, it should affirmatively appear from the return contemplated by section 116 that the appraisers in making the award submitted by them took into consideration both the damage to the property described and such special benefits, if any, resulting from the establishment or change of grade as tend to increase the value of the property in question, and that the award so made represents the difference or balance in favor of the property owner. Such is the rule sanctioned by the weight of authority,—if indeed there can be said to exist a diversity of opinion on the subject,—and is clearly implied from the language employed. The statute thus interpreted prescribes a constitutional basis for the ascertainment of the damage in favor of property owners, and is in strict accord with the rule often recognized by this court in the assessment of damage when property is taken by railroad companies or other public agencies in the exercise of the right of eminent domain. (*Chicago, K. & N. R. Co. v. Wiebe*, 25 Neb., 542; *Chicago, B. & Q. R. Co. v. Shafer*, 49 Neb., 25.)

It has been suggested that inasmuch as there was no finding of damage in favor of the appellants or any of them, they should not in this proceeding be heard to complain of the award in favor of the successful claimants. But the fallacy of that argument becomes apparent when we remember that the city council in the ap-

portionment of the damage evidently acted upon the assumption that the entire amount awarded by the appraisers was chargeable against the property specially benefited in proportion to the benefits accruing to the several lots or parcels of land affected. It is obvious, therefore, that the effect of the failure to take into consideration benefits accruing to the twenty separate lots and fractions of lots enumerated in the appraisers' return was to increase by the amount of such benefits the total sum assessed against the two hundred lots adjudged to have been beneficially affected by such improvement. We must not, however, be understood as assenting to the proposition that the total sum rightly awarded as damages in cases of this character is chargeable against the lots benefited by the improvement in question without regard to the amount or value of the benefits severally accruing thereto. The legislature has on the contrary, by the qualification with respect to special benefits, not only provided a ratio of assessment, but has also, by plain implication, limited the amount of such assessment to benefits accruing to the particular lot or parcel of land affected. The legislature may confer upon cities, towns, and villages "power to make local improvements by special assessment or special taxation of property benefited." (Constitution, 1875, art. 9, sec. 6.) That provision has been construed as limiting the assessments there contemplated to the property specially benefited and to the amount of the benefits so conferred. (*Hanscom v. City of Omaha*, 11 Neb., 37; *Cain v. City of Omaha*, 42 Neb., 120.) And, as said in *Village of Passaic v. State*, *supra*, "The act must be construed as if it contained an express limitation of the assessment to the land benefited and the further limitation of the amount of the assessment to the benefit received." It follows without further elaboration that the proceedings antecedent to the action complained of were insufficient to invest the city council with jurisdiction and that assessment of appellants' property is accordingly without authority and

void. The decree is accordingly reversed and the cause remanded with instruction to enter a decree in conformity with this opinion.

REVERSED.