Hutchinson v. City of Omaha.

---

CARLTON D. HUTCHINSON ET AL., APPELLANTS, V. CITY OF OMAHA ET AL., APPELLEES.

FILED SEPTEMBER 22, 1897. NO. 7306.

| 52 | 345 |
|----|-----|
| 53 | 168 |
| 54 | 87 |

| 52 | 345 |
|----|-----|
| 58 | 247 |
| 58 | 841 |

| 52 | 345 |
|----|-----|
| f60 | 262 |
| 60 | 268 |

| 52 | 345 |
|----|-----|
| 61 | 81 |

1. **Municipal Corporations: GRADING STREETS: ASSESSMENTS.** The charter of metropolitan cities, as it existed in 1890, granted to the mayor and council power to grade "any street," or part of street, one-half the expense to be paid from the general fund and one-half by local assessment upon property abutting, or adjacent, and specially benefited. When owners of abutting property representing three-fifths of the frontage petitioned therefor, the mayor and council were required to grade, and in that case the whole expense was defrayed by local assessment on abutting property. *Held*, That under the latter provision two or more streets could not be united in a single improvement and the total expense distributed against the property abutting on all.

2. ———: ———: **ASSESSMENTS.** Where power to make an improvement is derived from a petition of property owners the work must be done according to the petition in order to found a local assessment to pay therefor.

3. ———: ———: ———. The provision of a charter that no court shall entertain a complaint that the party was authorized to make, and did not make, to the board of equalization has no application where the tax complained of is void.

4. ———: **BOARD OF EQUALIZATION.** A board of equalization must be and remain in session ready to hear complaints during the hours advertised for its meeting.

5. ———: TAXES: ESTOPPEL. A taxpayer is not estopped from resisting a tax because he has suffered the work to proceed before complaining, when in so doing he was not guilty of laches.

6. ———: INVALID TAXES: REMEDY: COURTS. The levying of a tax is not a judicial act and the court cannot impose, as a condition of relief against a void tax, the payment of such tax as would be lawful, where new proceedings and a different basis of assessment are necessary to ascertain what tax is lawful.

APPEAL from the district court of Douglas county. Heard below before WALTON, J. *Reversed. Decree for plaintiffs.*

*John P. Breen*, for appellants.

*W. J. Connell* and *Lee S. Estelle*, contra.

IRVINE, C.

This was an action by Carlton D. Hutchinson and several others, on behalf of themselves and others similarly situated, the purpose of which was to obtain an injunction restraining the defendant city from collecting certain local assessments. The district court found for the defendants and dismissed the case. Plaintiffs appeal. There is in the city of Omaha an addition known as "Walnut Hill," laid out in rectangular blocks, and traversed from east to west by George, Nicholas, and Nelson streets, and from north to south by Rebecca, Bird, Eureka, Dale, and Dewey streets and Institute boulevard. It appears that in 1890 property owners in Walnut Hill filed a petition with the city council whereby they asked that the streets above named within said addition "be graded to the present established grade of said streets, as soon as practicable, and without expense to the city." The charter provision then applicable is embraced in section 69 of an act incorporating metropolitan cities (Session Laws, 1887, ch. 10), as amended by Session Laws, 1889, ch. 13, sec. 14. By this section the mayor and council are given power "to open, * * * grade, * * * or otherwise improve, * * * in any man-

ner they may deem proper, any street, avenue, or alley within the limits of the city, * * * and to defray the costs and expense of such improvements or any of them, the mayor and council of such city shall have power and authority to levy and collect special taxes and assessments upon the lots and pieces of ground adjacent to or abutting upon the street, avenue, alley, or sidewalk, thus in whole or in part opened, * * * graded, * * * or otherwise improved or repaired, or which may be specially benefited by any of said improvements." By said section it is further provided that one-half of the expense of bringing the streets to the established grade shall be paid out of the general fund of the city; but further that "whenever the owners of the lots abutting upon any street or alley or part thereof, within said city representing three-fifths of the feet front abutting on such part of street or alley desired to be graded shall petition the council to grade such street or alley, or part thereof, without charge to the city, the mayor and council shall order the grading done and assess the cost thereof against the property abutting upon such street or alley or such part thereof so graded." It was under this last provision that the petition was designed to operate. In pursuance of the regular course in such matters the petition was referred to the city engineer, who certified that each of the streets except Rebecca street and Institute boulevard was represented on the petition by the requisite signatures of abutting property owners. An ordinance was then passed declaring the necessity of grading each of the streets named except Institute boulevard. There was an appraisement of damages and the council then passed an ordinance ordering the grading of all the streets except Rebecca street and Institute boulevard. It seems that there was at the time no grade established for some of the streets named and the council, after these proceedings, established a grade. A contract was then let for the work and the streets named in the last ordinance were graded. From the scheme there were, however, omitted

Rebecca street and Institute boulevard, which were included in the original petition, and this for the reason that the petition did not receive the signatures of the owners of three-fifths of the frontage upon those streets. The next step was to change the grade of at least one street, to-wit, George street, and the work was done according to the changed grade. When the work was completed a notice was published of a meeting of the council as a board of equalization to equalize the assessment therefor. The council held, or pretended to hold, a session as a board of equalization and adopted a scheme of taxation whereby the total cost of grading the seven streets was ascertained, this divided by the total frontage of all the streets graded, and an assessment made per front foot of all the property abutting on the streets graded. It is this assessment of which the plaintiffs complain.

It will be observed that the scheme of the petition was a joint grading of all nine streets; that the city, instead of following the petition, treated it in the first operations as a petition for nine different improvements and as sufficient only with regard to seven; that the work was not carried out in accordance with the petition by grading "to the present established grade," but some streets were graded according to grades thereafter established, and one, at least, was graded to a new grade, the change being made after the petition was filed. Then the city abandoned its theory of each street constituting a separate improvement and treated the seven streets graded as a single improvement, distributing the cost among all the abutting property owners on the seven streets and not charging against those on each street simply the cost of grading that street.

We think this tax was in its inception, in its groundwork, and throughout, absolutely void. It is familiar law that in order to sustain an assessment of this character the record must show affirmatively a compliance with all the conditions essential to the valid exercise of the taxing

power. (*Smith v. City of Omaha,* 49 Neb., 883.) It is no less familiar that statutes authorizing the exercise of such power are to be strictly construed. Expressing his individual opinion only, the writer will say that he believes that such grants of power hold out temptations and opportunities for the confiscation of property to such an extent that the protection of property rights demands that they should receive the very strictest construction, and that the courts should be insistent that the proceedings should be of the utmost regularity. Recurring to the charter, we find the grant of power is to grade "any street." This is followed by express permission to grade a part of the street. There is no express authority to join several streets in a single improvement and to charge upon the owners of land abutting upon one the expense of grading another. Nor do we think that we have any right to imply such authority from the language of the charter. That such a measure would in some instances be more economical and of actual advantage to property owners is wholly aside from the question. That was a matter for the legislature to determine, and such a power cannot be sustained by the courts, merely from motives of expediency, in the absence of legislative authority. The petition was joint and the owners of lots abutting on different streets joined indiscriminately therein. It was the manifest purpose of the petition that the work should be carried on as a joint improvement of the nine streets. It was therefore insufficient to confer power upon the city to proceed under the so-called three-fifths clause, whereby the total expense of grading is charged upon abutting property, and the city had no right to sever the petition and treat it as a petition for nine distinct improvements; much less to return partially to the original scheme, and after carrying out the improvement of seven streets alone, for the purposes of assessment treat those seven as a single improvement. This was not in accordance either with the original petition or the earlier proceedings under which the work was done. (*Baker v. Ashland,* 50 N. H.,

27; *Arnold v. City of Cambridge*, 106 Mass., 352; *Weckler v. City of Chicago*, 61 Ill., 142; *Mayall v. City of St. Paul*, 30 Minn., 294.) Moreover, in order to justify a local assessment which derives its authority as in this case solely from a petition of property owners, it is clearly necessary that the work should be done in accordance with the petition. Were it proper to unite the nine streets in one petition, the city lost its power to assess the whole expense against the abutting property by omitting two streets of the nine from the improvement and by grading others to grades not then established as the petition required.

It is contended by the city that the plaintiffs cannot be heard in this proceeding because by another clause of said section 69 it is provided that "no court shall entertain any complaint that the party was authorized to make and did not make to the city council sitting as a board of equalization, * * * nor any complaint that does not go to the ground-work, equity, and justice of the tax." The writer is very firmly of the opinion that the legislature is without power to prevent the courts from granting any relief which the circumstances of the case may render necessary. But without passing on the provision quoted in its whole scope, it is sufficient to say that it is now settled by a long line of decisions that no such provision is applicable to a void tax. At most it can only relate to such taxes as are irregular merely. (*Touzalin v. City of Omaha*, 25 Neb., 817; *Bellevue Improvement Co. v. Village of Bellevue*, 39 Neb., 876; *Morris v. Merrill*, 44 Neb., 423.) This tax was void. The petition which was necessary to authorize it was insufficient, and the tax was assessed for the purpose of paying for work different from that contemplated in the petition. Furthermore the record discloses that there never was a sitting of the board of equalization in any proper sense of the term. The notice was that the council would sit as a board of equalization at the office of the city clerk on the 4th day of December, 1891, from 9 A. M. to 5 P. M. About the first hour named a majority of the members of the council

Hutchinson v. City of Omaha.

appeared at the place designated and appointed a chairman. They one by one drifted away, and an entry was made that a recess had been taken subject to the call of the chairman. The chairman himself remained for the purpose of receiving written protests, but the board was not there to hear them. Some days thereafter, without any new notice, the chairman, by casual meetings on the streets, called the board together and the session was resumed and the scheme of assessment agreed upon. Such a proceeding cannot be tolerated. Property owners are entitled to have the board in session during the hours advertised, and when they do not in fact sit they cannot conceal their dereliction under the subterfuge of a recess and a subsequent meeting without notice.

It is also claimed that the plaintiffs are estopped because they did not proceed until after the work was completed. It is only in cases of laches that the plaintiffs are estopped by permitting the work to progress. The fact that the work was progressing was not notice to these plaintiffs that the city did not intend to proceed therewith according to the petition, and some of them had no actual knowledge of the fact. Moreover, the city had a general power to grade the streets, assessing one-half the cost against the abutting and adjacent property and that specially benefited. As it had that power, it is difficult to see how the plaintiffs could have prevented the performance of the work.

The plaintiffs offer in their petition to pay such a tax as is just and lawful, and the defendant insists that in any event they should be required as a condition of relief to pay one-half the expense of the grading, it being within the general power of the city to perform the work and assess one-half the cost against them. But we cannot in this action impose such a condition. The levying of assessments is not a judicial act. The cost of the work under the general power must be defrayed by ascertaining the cost of grading each street separately and assessing one-half thereof against not only the abutting property

but the adjacent property and that specially benefited; and it goes almost without saying that it must be confined to property specially benefited. (*Smith v. City of Omaha, supra.*) The assessment must be on an entirely different basis from that pursued, and is a matter for the mayor and council and not for the court. The plaintiffs are entitled to a decree in accordance with the prayer of their petition, perpetually enjoining the collection of the tax of which they complain, and such a decree will be entered in this court.

JUDGMENT ACCORDINGLY.

HARRISON, J., not sitting.