[No. 8801.   Department One.   July 25, 1910.]

REAL ESTATE INVESTMENT COMPANY, *Appellant*, v. THE CITY
OF SPOKANE, *Respondent*.[1]

MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—APPEAL — STAT-
UTES.   The act of 1905 (Rem. & Bal. Code, § 7905), entitled an act to
validate municipal assessments and to prohibit setting the same
aside except for fraud, was not intended to repeal the act of 1901
(Rem. & Bal. Code, § 7552), authorizing an appeal from the confirm-
ation of an assessment by the city council to the superior court, and
does not affect such appeals or the procedure therein.

SAME—PROTESTS—FORM—OBJECTIONS.   A notice of appeal from
the confirmation of an assessment by a city council may be informal,
and is sufficient if it is made to appear that the owner protests
against the costs as excessive and disproportionate to the value of the
property, and because the benefit is not in proportion to the cost,
it only being necessary to clearly state the grounds of the objection.

SAME—CONFIRMATION OF ASSESSMENT—RESOLUTION OR ORDINANCE
—APPEAL.   Under Rem. & Bal. Code, § 7532, providing that the city
council shall confirm an assessment as corrected by resolution or
ordinance, in conformity with the charter, a city council may con-
firm an assessment by resolution, although another ordinance pro-
vides that all orders of confirmation shall be by ordinance, since the
power of the council depends upon the general law and the charter;
hence an appeal from a resolution confirming an assessment is not
premature.

APPEAL—DECISION—REMAND.   Where an assessment by a city
council is erroneously confirmed on appeal to the superior court,
for the reason that no fraud had been shown, without considering
the merits, the case will be remanded for a full hearing in the court
below.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered September 22, 1909, upon
motion of the defendant, confirming an assessment roll for a
public improvement.   Reversed.

*Post, Avery & Higgins*, for appellant.

*E. O. Connor* and *Cullen & Dudley*, for respondent.

[1]Reported in 109 Pac. 1057.

CHADWICK, J.—The city of Spokane, by appropriate pre-
liminary proceedings, declared its intention to improve a part
of Prospect street in that city, made an estimate of the cost
of the improvement, and prepared an assessment roll which
came on for hearing on the 8th day of December, 1908. The
hearing was then continued until December 22, 1908, when
is was considered upon the following objection and protest
theretofore filed by appellant:

"Spokane, Wash., Nov. 13, 1908.
"To the Honorable City Council:
"The undersigned, owners of property along Prospect
avenue, protest against the grading and sidewalking of
said avenue between Grand street and City View street, ac-
cording to the plans and specifications now on file in the city
engineer's office, and respectfully petition that the assess-
ment for grading and sidewalking said avenue be not con-
firmed.

"The bid for grading said avenue is $9,620, and for
sidewalking the same is $1,720. The foregoing charges, in
our judgment, are excessive. Our properties are not suffi-
ciently valuable to justify any such expenditure. The benefit
which we will receive will not be anywhere near in propor-
tion to the cost of this work. A few years ago Grand street
north of Twelfth avenue was graded at what was deemed to
me a high cost. The Grand street grade is now being con-
tested in the courts upon the ground of the excessive cost,
with the likelihood of the assessment on that street being
declared invalid. The Prospect avenue assessment approxi-
mates the Grand street assessment just mentioned. We ask
that the present assessment be not confirmed, so we may have
an opportunity to work out a plan of grading that will be
satisfactory to us and at a reasonable cost. Respectfully."

Then followed the name of the property owner, a descrip-
tion of its property, and the particular sums assessed against
the several tracts. At the time set for hearing, appellant
appeared by counsel and orally protested. Appellant's ob-
jections were overruled, and a resolution passed confirming
the assessment. An appeal was taken to the superior court
within ten days thereafter. On January —, 1909, the city

27—59 WASH.

duly passed an ordinance confirming the assessment roll, but no appeal was thereafter taken by appellant, it relying upon its appeal from the order evidenced by the resolution. After a trial on the merits had proceeded to some length, and appellant had rested, judgment was entered on motion of respondent, confirming the assessment upon the ground and for the reason that no testimony had been adduced to show that the council acted in bad faith or fraudulently in levying and confirming the assessment.

The learned trial judge felt himself bound by the terms of chapter 150, Laws of 1905, page 281 (Rem. & Bal. Code, § 7905 *et seq.*), entitled: "An act to validate assessments made, or which may be made, to pay for local improvements, by any incorporated city in this state, and to prohibit the setting of such assessments aside or declaring the same invalid upon any ground other than upon the ground of fraud;" rather than by chapter 118, Laws of 1901, page 243, § 2 (Rem. & Bal. Code, § 7552), under which the appeal had been taken. Reference to the act of 1905 will show that it nowhere and in no way refers to appeals or appellate procedure, but is an independent act which, although inartificially drawn, seems intended to validate all assessments, unless fraud be affirmatively shown when such assessments are drawn in question, upon a foreclosure proceeding. We cannot believe that it was the intention of the legislature when enacting the law to nullify and repeal by implication the act of 1901, allowing an appeal to be taken from an onerous or oppressive assessment or one made without reference to the benefits when levied under an ordinance so providing. The act of 1905, being independent of all others, was, in our opinion, clearly intended to save assessments of the tax— except in cases of fraud—when attacked collaterally, leaving to the aggrieved property owner existing remedies and the right to raise any objection upon direct attack. We are convinced that the statute of 1905 was passed to meet this condition and is not controlling in this case, and so hold.

But it is insisted that, although appellant had the right
of appeal, the judgment must be sustained for two reasons,
(1) the protest made by appellant was insufficient to operate
as an objection under the statute, and (2) the appeal was
premature, being taken before the passage of the ordinance
confirming the assessment, by which method alone a legal con-
firmation may be had.    Treating these propositions in their
order, we may admit that the protest which we have set out
is informal, and would not be sustained as a sufficient plead-
ing in a court of law.    But the statute contemplates that the
proceedings before the city council will be informal, and if it
be made to appear that the property owner appeared and ob-
jected, although in the most general terms, he should not be
denied his remedy, or his protest be measured by the tech-
nical rules of pleading.    There was enough to show, that
the property owner considered the whole cost of the improve-
ment excessive, that its property was not sufficiently valuable
to justify the expenditure, that the benefit was not in pro-
portion to the cost of the work, that it desired to suggest or
bring about a plan of grading at a more reasonable cost;
and that the assessment should not be confirmed.    All that
is required is that the "objection shall state clearly the
grounds of objection."    The protest was clear enough to
put the council to a consideration of it, and this being so, it
was sufficient to sustain a right of appeal.

Nor do we think the appeal was premature.    The charter
of the city, § 67, is silent as to the manner of confirmation;
but the statute, Laws 1901, page 240, § 2 (Rem. & Bal.
Code, § 7532), provides that the council shall "confirm the
same, as corrected by resolution or ordinance, in conformity
with the charter of such city."    But it is said that, inasmuch
as the Ordinance No. A-1,088, § 8, provides that,

"At the time appointed for hearing objections to such
assessment the council shall hear and determine the objec-
tions which have been filed by any party interested to the
regularity of the proceedings in making such assessment and
to the correctness of the amount of such assessment, or of the

amount levied upon any particular lot or parcel of land; . . . and confirm the same as corrected, or set aside such roll, and order that said assessment be made *de novo*, or refuse to confirm such roll, as to the council shall appear equitable and just. *All orders of confirmation shall be by ordinance,*"

no confirmation could be legally made except by ordinance; and the case of *Bellingham Bay Imp. Co. v. New Whatcom*, 17 Wash. 496, 50 Pac. 477, is cited as conclusive upon this point. That case arose under chapter 95, Laws 1893, page 226, and aside from the fact that the act of 1893 provided in terms that the assessment or reassessment should be approved and confirmed *by ordinance*, we find by examination of the briefs and records in that case that objections had been considered by a committee of the whole council which had reported its consideration and recommendation, but no action either by resolution or ordinance had been taken by the council at the time of the appeal. The power of the council must rest upon the charter and the general law so far as it has assumed to declare the attendant procedure, and when the council has, either by resolution or ordinance, approved the roll, it is conclusive so far as the objecting property owner is concerned; for the object of the 1901 law in this regard is to fix the time and the fact rather than the manner of the council's doings.

Respondent has discussed in some degree the merits of the case, but we conceive from a consideration of the whole record that the court entered judgment confirming the assessment because of the technical objection that no fraud had been shown, and not upon the merits, and therefore the merits of the case should not be decided without a full hearing in the court below.

For the reasons assigned, the judgment of the lower court is reversed, and this cause is remanded for a new trial.

RUDKIN, C. J., FULLERTON, GOSE, and MORRIS, JJ., concur.