[No. 9950.   Department One.   May 31, 1912.]

C. G. GERLACH et al., Appellants, v. THE CITY OF SPOKANE, Respondent.[1]

MUNICIPAL CORPORATIONS—ASSESSMENTS—PROCEEDINGS—APPEAL—REQUISITES—BOND—EXECUTION. Rem. & Bal. Code, § 7550, providing that on appeal from a decision of a city council upon the confirmation of an assessment, the appellant shall execute and file a bond, is sufficiently complied with to give jurisdiction of the appeal, where a bond, purporting to be given in behalf of appellant "and others," was signed by one of the appellants and a surety, the condition being broad enough to hold the surety on account of any of the appellants, and the notice of appeal being signed by the proper parties.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENTS—LIMIT—STATUTES—CONSTRUCTION. Where a city of the first class has provided itself with a general plan for the improvement of streets, under the privileges so to do granted by Rem. & Bal. Code, § 7573, the restriction of Rem. & Bal. Code, § 7571, limiting assessments to fifty per cent of the value of the land assessed, has no application, in view of the optional clause expressly authorizing the city to "avail itself of this act . . . but it shall not be construed as a taking away" from such city any power possessed under its charter or any state law.

SAME—ASSESSMENTS—APPEAL—PARTIES ENTITLED. Upon appeal from an assessment, the appellant cannot allege error in excluding evidence of benefits which was offered by a property owner not appealing.

SAME — PROCEEDINGS — DISTRICT—STREETS INCLUDED — BENEFITS. Under a power to improve any street, a city may in one proceeding provide an assessment district for the improvement of several streets, where the total cost is thereby reduced, and by a process of

[1]Reported in 124 Pac. 121.

bookkeeping the cost of each street is limited to and levied upon abutting property.

MUNICIPAL CORPORATIONS—ORDINANCES—SUBJECT AND TITLES. An ordinance for paving, curbing and sidewalking a number of streets, and also for a drainage system, is not repugnant to a charter providing that no ordinance shall contain more than one subject.

MUNICIPAL CORPORATIONS — IMPROVEMENTS—PROCEEDINGS — ORDINANCE—DUPLICITY. An ordinance for the improvement of various streets at the expense of property abutting on each street, and for a drainage system, to be assessed upon all the property of the district, is not void for duplicity, where the drains or sewers were not laid on every street, the drains laid gathering the waters that collect on all the streets in part through surface drainage.

SAME—METHOD OF ASSESSMENTS—ARBITRARINESS—REVIEW—BENEFITS. The fact that assessments are distributed in part by the zone system, at varying percentages of the cost where the lots are parallel to the street, while lots fronting on the street are assessed for the whole cost of that part, does not warrant the setting aside of the assessment as arbitrary, unless it is shown that the assessment is greater than the benefit.

SAME—REBATES FOR IMPROVEMENTS. The fact that owners had put in part of the improvements provided for does not result in double assessments, where the ordinance provides for rebates in such cases, and no showing is made that a satisfactory settlement had been refused by the city.

MUNICIPAL CORPORATIONS — IMPROVEMENTS — EXCESSIVE ASSESSMENTS—ORDINANCE FIXING MINIMUM WAGE—CONTRACTS. Where an ordinance required all common labor on public works to be paid a minimum wage, which was in excess of the ordinary wage for common labor, a property owner may object to the assessment in that free and open competition in letting the contract was restricted and the cost of the work increased; but the contract will not be held void, since the excess of cost resulting can be deducted from the assessment.

DUNBAR, C. J., dissents.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered May 1, 1911, in favor of the defendant, confirming an assessment roll for a public improvement, upon appeal from the city council. Modified.

*S. P. Domer* (*Harris Baldwin*, of counsel), for appellants.

*A. M. Craven, William E. Richardson, John E. Orr*, and *Allen & Allen*, for respondent.

CHADWICK, J.—This case involves a number of questions of law which may be stated in the abstract and severally discussed. Appellant Gerlach and several others appealed from an order of the city council confirming an assessment roll for street improvements. The appeal bond was stricken by the court because the penalty—$200—provided by statute had not been written in the body of the bond, and possibly because it was not signed by any of the appellants other than Mr. Gerlach. A new bond in which the penal sum was inserted was thereafter filed. This bond was signed by Mr. Gerlach alone, with a surety. It is now contended that Mr. Gerlach's coappellants have no standing here, because they did not sign the bond, when the statute, Rem. & Bal Code, § 7550, provides specifically that "the appellant shall execute and file . . . a sufficient bond," etc. It is admitted that, if this were an ordinary appeal bond, no signing would be necessary, and this would be so where, as in this case, the bond purports to be given on behalf of "Gerlach and others," and the condition is broad enough to hold the surety. *Spokane & Idaho L. Co. v. Loy*, 21 Wash. 501, 58 Pac. 672, 60 Pac. 1119; *Hopkins v. Satsop R. Co.*, 18 Wash. 679, 52 Pac. 349; *State v. Fisher*, 4 Wash. 382, 30 Pac. 502.

But it is sought to impress the word "execute," with the definition "to sign," and to hold the statute, § 7550, as thus construed, to be jurisdictional. The word "execute" may have such meaning; as, for instance, if the law requires a deed to be signed by a grantor, to execute such deed would mean to sign and deliver; or if, under the statute of frauds, it is provided that a writing shall be signed by the party to be charged, it could not be executed without signing. But in this case our attention is not directed to any statute in terms requiring a bond of this character to be signed, and we think the word "execute" should be given a broader meaning. The city was not misled. The notice of appeal was properly given and signed by the proper parties. The city's only interest in the bond is to see that it is in form to assure

a right of recovery. The appellants being bound in any event, and the condition of the bond being broad enough to cover a liability incurred on account of any one of the appellants, it would be manifestly unjust to hold the alleged defect to be of sufficient importance to oust this court, or the trial court, of its jurisdiction to hear the appeal of all those who have joined in the notice of appeal.

In the *Loy* case above cited, the general rule that a bond must be signed where the statute requires that it be executed is recognized, but this court said:

"But even in those jurisdictions where the bond is required to be executed by the appellant, a bond signed by one appellant on behalf of all is sufficient."

In *Real Estate Inv. Co. v. Spokane,* 59 Wash. 416, 109 Pac. 1057, this court indicated a purpose to take a broader view of questions of the character here raised, and to sustain the right of property owners to appeal where they had substantially complied with the spirit of the statute. We prefer to hold that a bond is "executed" under the statute cited, when it is filed and where, without reference to its form, it will save the city harmless if it prevails in the end.

The point is made that the court rejected evidence offered to prove that the cost of the improvements exceeded fifty per cent of the valuation of the land to be assessed, in defiance of Rem. & Bal. Code, § 7571. The city having exercised the privilege granted by the legislature (Laws 1903, p. 122, ch. 82, § 3; Rem. & Bal. Code, § 7573), to provide for itself a general plan for the improvement of streets, and having acted under it, we think § 7571 is necessarily eliminated as a factor in this case. Full power is granted to the city to adopt its own plan of improvement or to operate under the general law, the optional clause being:

"Any city of the first class may avail itself of this act, notwithstanding any provision in its charter inconsistent herewith, but it shall not be construed as taking away from

any city of the first class any power which it possesses under its charter or any state law."

See, also, *Norman v. Spokane,* 67 Wash. 630, 122 Pac. 330.

It is said that the court erred in rejecting evidence in regard to benefits. We are of opinion that this objection is not available to these appellants. The testimony was offered by a party who has not appealed. As the question of benefits goes to the particular tract or tracts to be assessed, we will not presume that a showing or an offer to show no benefit as to one lot will amount to a showing of no benefit to another.

Another and possibly the main reliance of the appellants is that, in making an improvement, the council made an assessment district approximately described as extending from a line midway between Fourth and Fifth avenues, on the north, to a line midway between Tenth and Eleventh avenues on the south, and from the west line of Monroe street to the west line of Cannon street; whereas the authority of the city, as gathered from § 61 of the charter, does not permit or extend its power to contract for the improvement of more than one street or avenue under one contract. The power, as declared in art. 4, § 61, of the city charter, is:

"To construct and maintain, or cause to be constructed and maintained, sidewalks, and to curb, recurb, grade, regrade, pave, repave, plank, replank, macadamize, remacadamize, gutter and regutter any street, avenue, public way or alley therein, or any part of any such street, avenue, public way, or alley; and to pay for the cost of such improvement, may levy and collect a special tax or assessment upon the lots and parcels of land abutting upon, adjacent or proximate to the portion of the street, avenue, public way or alley so improved, and, for this purpose, the city shall, by ordinance, establish assessment districts, which shall include the lots and parcels of land benefited by said improvement; provided, however, that such assessment district shall be coterminous with the portion of the street, avenue, public way or alley improved, and the side lines of such assessment district shall in no event be distant more than 150 feet from the

nearest side line of the street, avenue, public way or alley improved."

This section was amended in May, 1909, but under our view of the law the amendment is not material to the present inquiry. The question is put: "Can it be said, for instance, that the lots on Tenth avenue in said assessment district are benefited by the paving and curbing and sidewalking of Fifth avenue" (a parallel avenue five blocks away)? If a correct decision rests upon this premise, we would feel bound to hold with appellants, but it is shown that, in the interest of economy, the city can, by creating a district including several streets, make more favorable contracts, and thus reduce the cost to the property owner; and that neither the cost nor benefit to a lot on Fifth avenue is considered when estimating the cost or benefit to a lot on Tenth avenue. By a system of bookkeeping, the cost to each lot or parcel of land and of each street is kept separate, so that no injury comes to the property owner; but on the contrary there is, theoretically, if not actually, a positive benefit. So that, unless there is an affirmative showing of injury, a court would be entirely without justification if it should annul by its decree that which in the end operates as a substantial compliance with the law. This principle has been sustained by this court in *Lewis v. Seattle*, 28 Wash. 639, 69 Pac. 393, and *In re South Shilshole Place*, 61 Wash. 246, 112 Pac. 228, and in the following cases from other jurisdictions: *Lewis v. Albertson*, 23 Ind. App. 147; *City of Springfield v. Green*, 120 Ill. 269, 11 N. E. 261; while the cases of *Haley v. Alton*, 152 Ill. 113, 38 N. E. 750, and *Mayor etc. of Savannah v. Weed*, 96 Ga. 670, 23 S. E. 900, are directly in point. In the last case, under a power to grade, etc., *any* street, etc., the court said:

"The passage of the ordinance is simply the evidence that, according to the discretion vested in the mayor and aldermen, the improvement of the street or streets covered thereby is necessary to the welfare of the city, and we know of no reason why this declaration may not as well be made

by a single ordinance to cover a number of streets, the improvement of which in the judgment of the city council is necessary, as it could be made to cover only a single street. The power to pass an ordinance for the improvement of any of the streets of the city, includes the power to improve any number of the streets. We think, therefore, that the objection to the ordinance, upon the ground that it contemplated the improvement of more than a single street and was consequently illegal and contrary to the charter power, is without merit."

Appellants rely on *Arnold v. Cambridge*, 106 Mass. 352; *Hutchinson v. Omaha*, 52 Neb. 345, 72 N. W. 218, and *People ex rel. O'Reilly v. Common Council of Kingston*, 189 N. Y. 66, 81 N. E. 557. Read in the light of our holding that the cost for each street must be limited to and levied upon abutting property, the property expressly benefited, the first two cases are not hostile to our ruling. The third case rests upon another principle and is not in point.

Neither is the ordinance repugnant to art. 4, § 34, of the charter, providing that "all legislative acts of the city council shall be by ordinance, the subject of which shall be clearly set out in the title; and no ordinance shall contain more than one subject." It is said that the ordinance under which the improvement was prosecuted contains four subjects; (1) paving, curbing, and sidewalking the streets and alleys in the assessment district; (2) the construction of a drainage system not authorized by § 61 of the charter; (3) the creation of an assessment district including more than one street; (4) the levying of a special assessment. Having passed the question of improving more than one street under one contract, it will need no argument to sustain our conviction that all other matters suggested are germane and proper to be included in the ordinance, unless it be the provision for the construction of a drainage system. If the record were silent upon the subject, we think we might judicially notice the fact that street improvements are permanent in character, and that the exercise of good business judgment on the part

of city councils demands that drainage where needed should be made at or before the time the paving is laid. We have no hesitation in holding that the provision for the drainage system is germane to the subject.

"The charter provision does not forbid the lawmaking body from passing an ordinance for a general object, and it may bring within its scope any number of sub-subjects germane to the general subject. Whatever is legitimately connected with a unified subject may be embraced in a single title or act." *Seattle v. Sylvester-Cowen Inv. Co.,* 55 Wash. 659, 104 Pac. 1121.

See, also, *In re South Shilshole Place, supra.*

In this connection, the question occurs whether the cost of the drainage system being laid *pro rata* over the whole district, while the cost of the street improvements is to be assessed to abutting property, would make the ordinance void for uncertainty or duplicity. The drainage sewers are not laid upon every street, but a showing is made that it is possible to take care of the waters in part by surface drainage. So that, if a drainage sewer on one street gathers the waters that collect upon the surface of another, the property owner cannot be heard to complain so long as the general scheme of drainage is worked out. To give heed to this objection on the part of appellants would be to say that a property owner might defeat the plan for drainage on the ground that it had been economically constructed. The ordinance is not void for duplicity.

Nor is there merit in the objection that a part of the assessments have been levied after a zone system; that is to say, if the lot abutting be parallel to the street improved, fifty per cent of the cost of improvement of the adjoining street is laid against it. Other lots within the 150-foot limit are assessed thirty per cent for the second lot and twenty per cent for the third lot. If a lot fronts on the improved street, the whole of the cost is to be taxed against it. There are certain presumptions which of necessity must attend these

proceedings; that is, that the improvement is a benefit (*Northern Pac. R. Co. v. Seattle,* 46 Wash. 674, 91 Pac. 244, 123 Am. St. 955, 12 L. R. A. (N. S.) 121), and that the finding of the commissioners and consequent assessment is fair (*Powell v. Walla Walla,* 64 Wash. 582, 117 Pac. 389). It therefore follows, as a just conclusion, that, unless it be shown by the property owner that the assessment is greater than the benefit, or that it is not equal or ratable with other property similarly situated, and in such degree that the difference would seem to be arbitrary, and in fraud of the rights of the property owner, courts will not inquire into the manner of the assessment. The method of distributing the cost, whether by front foot or by area or by a zone system, will not *ipso facto* invalidate the assessment. The reasoning of the court in *Alexander v. Tacoma,* 35 Wash. 366, 77 Pac. 686, is apt.

"It is not disputed that the assessment is purported to have been made according to benefits, and that the city council found that it was so made, but it is said that this finding is merely colorable and perfunctory, because it appears that all of the lots were assessed alike, and for the precise amount they were assessed for when the apportionment was made according to the front foot plan, and concededly without reference to benefits. It seems to us, however, that these facts argue nothing. Surely, it cannot be denied that a possible condition could exist where an improvement of a street would benefit all of the lots thereon precisely alike, yet it must be so denied in order to overturn this assessment in this proceeding. The assessment to be overturned in this proceeding must be void on its face, and it could only be void for the reason here given on the theory that under no conceivable conditions could lots abutting upon an improvement be equally benefited thereby. But so far from this being impossible, it would seem that it would be found to actually exist in many instances. To pave and curb a street which has already been brought to grade, and the abutting property built upon with reference thereto, would seem rather to benefit each part of it alike than otherwise, especially where, as in

this case, no unusual or special conditions are shown to exist."

In many instances curbs and gutters had been put in by the property owners, and it is urged that to allow assessments in such cases would result in double assessments. Inasmuch as the ordinance provides for a rebate in such cases, the affected property owner must look first to local authorities for relief. This court will not presume that a satisfactory settlement and credit cannot be made through the officers designated in the ordinance. It will be time enough for the courts to consider the objection here made when it is made to appear that a satisfactory settlement has been refused by the city.

Finally, it is contended that the contract is void, in that it was let under an ordinance calling for the payment of a minimum wage of $3 per day of eight hours for common labor; whereas it is made to appear that the ordinary wage for common labor in private employment did not exceed $2.25 for a day of nine hours. It is said this objection is not available to appellants, because of their failure to object upon that specific ground when the roll was before the city council for confirmation. As we view the record, the objections there filed were sufficiently specific to raise the present issues. Under the authority of the case of *Malette v. Spokane*, ante p. 578, 123 Pac. 1005, we hold that the contract is not void, but is subject to the right of an injured property owner to object in the manner and within the time provided by law. It is a material and important right of the property owner that there shall be free and open competition in the matter of improvements to be paid for by special assessments, unrestricted by any arbitrary rule or requirement the natural tendency of which would be to increase the cost of the work; and where, as it is shown in this case and in the *Malette* case, the wages fixed by the ordinance are unreasonably in excess of the going wage, the property owner is entitled to diminish the sum assessed against his property so as

to make the cost fair and equitable considering the circumstances of the particular case.

The judgment of the lower court is therefore affirmed in all things, excepting in so far as it has confirmed the assessment upon the property of the several appellants, and the case will be remanded with directions to make such adjustment of the assessment upon the property of the appellants as will eliminate the difference between the amount justly chargeable as wages at the rate of $2.25 per day of eight hours and the price paid by the contractor under the ordinance.

PARKER, CROW, and GOSE, JJ., concur.

DUNBAR, C. J., dissents.