[No. 11268. Department Two. December 19, 1913.]

*In re* WEST WHEELER STREET, SEATTLE.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENT OF BENEFITS—SEPARATE MATTERS. Where a street one hundred and fifty feet wide was condemned, one-half of the width being for an elevated road to connect two bluffs and one-half for a road on the surface for the use of and exclusively benefiting lowlands in the valley between the bluffs, there are in fact two separate improvements, and it is error to assess part of the cost of the one against property benefited only by the other, especially where no more favorable contract or price was obtained for the land by reason of the fact that it was condemned as part of one improvement.

Appeal from a judgment of the superior court for King county, Ronald, J., entered January 15, 1913, confirming an assessment. Reversed.

*G. E. de Steiguer, R. E. Thompson, Jr., Raymond D. Ogden,* and *Peters & Powell,* for appellants, cited: *In re South Shilshole Place,* 61 Wash. 246, 112 Pac. 228; *Southwick v. Santa Barbara,* 158 Cal. 14, 109 Pac. 610; *Gerlach v. Spokane,* 68 Wash. 589, 124 Pac. 121.

*James E. Bradford* and *C. B. White,* for respondent, contended that mere conflict in the testimony is not ground for

[1]Reported in 137 Pac. 303.

disturbing the findings in confirming the roll. *In re West-lake Avenue*, 40 Wash. 144, 82 Pac. 279; *In re Seattle*, 50 Wash. 402, 97 Pac. 444; *In re Pine Street*, 57 Wash. 178, 106 Pac. 755; *In re Twelfth Avenue*, 66 Wash. 97, 119 Pac. 5; *In re Fifth Avenue and Fifth Avenue South*, 66 Wash. 327, 119 Pac. 852. The two matters could all be embraced in a common scheme and it is immaterial that the subject was capable of subdivision. *In re Third, Fourth, and Fifth Avenues*, 49 Wash. 109, 94 Pac. 1075, 95 Pac. 862; *Springfield v. Greene*, 120 Ill. 269, 11 N. E. 261; *Drexel v. Town of Lake*, 127 Ill. 54, 20 N. E. 38; *Village of Hinsdale v. Shannon*, 182 Ill. 312, 55 N. E. 327; *Haley v. Alton*, 152 Ill. 113, 38 N. E. 750; *Walker v. People ex rel. Kochersperger*, 170 Ill. 410, 48 N. E. 1010; *Palmer v. Danville*, 154 Ill. 156, 38 N. E. 1067; *Wells v. Street Com'rs of Boston*, 187 Mass. 451, 73 N. E. 554; *Philadelphia & Reading Coal & Iron Co. v. Chicago*, 158 Ill. 9, 41 N. E. 1102; *Lincoln v. Board of Street Com'rs of Boston*, 176 Mass. 210, 57 N. E. 356; *Alden v. Springfield*, 121 Mass. 27; *Boyd v. Wilkinsburg Borough*, 183 Pa. St. 198, 38 Atl. 592; *Sears v. Street Com'rs of Boston*, 180 Mass. 274, 62 N. E. 397, 62 L. R. A. 144.

MOUNT, J.—This is an appeal from an order of the superior court of King county, approving a special assessment roll as prepared and filed by the eminent domain commission of the city of Seattle, to which objections have been filed by various property owners. The property owners have appealed.

It appears that, in the year 1911, the city of Seattle, by ordinance, authorized the condemnation of certain real property for the purpose of constructing certain overhead bridges and connecting what is commonly known as Magnolia Bluff with Queen Anne Hill, in the city of Seattle. Magnolia Bluff is a head land, lying in the northwest part of the city of Seattle, immediately west of what is commonly known as Smith's Cove. This bluff rises abruptly to a maximum elevation of about three hundred feet. To the eastward from Magnolia

Bluff, lies Queen Anne Hill which rises abruptly to a maximum height of about three hundred feet. Between these two hills is a valley, from a half to three-quarters of a mile wide. In this valley is Smith's Cove Waterway. Numerous railroads extend north and south lengthwise of this valley. Fifteenth avenue, west, runs in a northerly and southerly direction along the western slope of Queen Anne Hill. This is the only avenue for traffic between Magnolia Bluff and the lowlands lying between Magnolia Bluff and Queen Anne Hill to the business portion of the city of Seattle.

The object of this improvement was to build overhead roadways, extending from Fifteenth avenue, west, westward across the valley between Magnolia Bluff and Queen Anne Hill, so that the residents of Magnolia Bluff might reach the city of Seattle in a more direct and available route than theretofore existed. The roadway leading to Magnolia Bluff, or Twentieth avenue, west, and Thorndyke avenue, which is on the eastern slope of Magnolia Bluff, is proposed to be an overhead roadway from twenty to seventy feet high, extending from Fifteenth avenue, west, on Queen Anne Hill to Twentieth avenue, west, and Thorndyke avenue on Magnolia Bluff. As a part of the plan, it became necessary to condemn a roadway across the lowlands heretofore mentioned. This roadway is seventy-five feet in width. In order to accommodate the residents living in the lowlands, it was proposed to condemn a roadway from Fifteenth avenue, west, one hundred and fifty feet wide, down the side of the hill a distance of about two blocks, to Seventeenth avenue, west, lying in the lowlands. The roadways were thus condemned. Seventy-five feet of the roadway from Fifteenth avenue, west to Seventeenth avenue, west, was designed for the overhead roadway extending to Magnolia Bluff, while the northeasterly half of the roadway, seventy-five feet in width, was to be constructed upon the ground for the purpose of serving the people living in the valley or lowlands.

It is apparently conceded in the record that this strip of

roadway, one hundred and fifty feet wide from Fifteenth avenue, west, to Seventeenth avenue, west, was condemned at a cost of $69,123; and that $3,588.75 of this cost was assessed to the lowlands, while the balance thereof was assessed to the highlands lying upon Magnolia Bluff.

The evidence shows conclusively that the roadway seventy-five feet wide leading from Fifteenth avenue, west, to Seventeenth avenue, west, located in the lowlands, will be of no use or benefit to the property lying upon Magnolia Bluff or to the west of the waterway; and that the overhead roadway extending from Fifteenth avenue, west, northwesterly across the lowlands, will be of no possible use or benefit to the property lying in the lowlands. The testimony was all to this effect, and the trial court so found. But, by reason of the fact that the improvement was provided for by one ordinance, the trial court was of the opinion that the improvement was one unified improvement not capable of separation; and that, because the evidence showed that all of the property assessed within the whole district comprising Magnolia Bluff and the lowlands would receive the benefit for which it was assessed, the trial court approved the assessment roll.

It seems clear to us—in fact there is no dispute upon the record—that, while these improvements were provided for by one ordinance, they are, in fact, two separate and distinct improvements. There is nothing in common between the two. There is no common use, by the people living in the lowlands, of the overhead structure leading to the highlands. There is nothing common between the improvement of the way to the lowlands and the overhead way to the highlands, except the mere fact that these two streets, one seventy-five feet in width on an elevated roadway, and the other a street constructed upon the ground, of the same width, adjoin each other at their connection with Fifteenth avenue, west. Otherwise there is no connection between the improvements.

The testimony shows that the improvement of the street seventy-five feet in width leading from Fifteenth avenue, west,

to Seventeenth avenue, west, in the lowlands, is of no benefit to the property of the highlands, any more than it is to any distant part of the city of Seattle. It is plain, therefore, that, while the two improvements were passed by one ordinance, they are, in fact, separate and independent of each other.

In the case of *Gerlach v. Spokane*, 68 Wash. 589, 124 Pac. 121, where this question was raised, we said:

"The question is put, 'Can it be said, for instance, that the lots on Tenth avenue in said assessment district are benefited by the paving and curbing and sidewalking of Fifth avenue' (a parallel avenue five blocks away)? If a correct decision rests upon this premise, we would feel bound to hold with appellants, but it is shown that, in the interest of economy, the city can, by creating a district including several streets, make more favorable contracts, and thus reduce the cost to the property owner; and that neither the cost nor benefit to a lot on Fifth avenue is considered when estimating the cost or benefit to a lot on Tenth avenue. By a system of bookkeeping, the cost to each lot or parcel of land and of each street is kept separate, so that no injury comes to the property owner; but on the contrary there is, theoretically if not actually, a positive benefit."

But that cannot be said in this case, for here it is conceded that about $30,000, being the cost of the roadway leading from Fifteenth avenue, west, to Seventeenth avenue, west, entirely for the benefit of the lowlands, is assessed to the highlands on Magnolia Bluff, which are not benefited in any way, either theoretically or otherwise. And it is not shown, nor is there any contention in the case, that a more favorable contract or price for the condemnation of this one hundred and fifty foot strip was made by reason of the fact that it was condemned as a part of the same improvement. We are clear, therefore, that it was the duty of the board of eminent domain commissioners to assess to the lands benefited thereby the cost of the roadway seventy-five feet in width from Fifteenth avenue, west, to Seventeenth avenue, west, leading to the lowlands, and not to assess such

cost, as was done in this case, to the lands concededly not benefited thereby.

The judgment of the lower court is therefore reversed, and the cause remanded with instruction to revise the assessment so that the cost of the street which is solely for the benefit of the lowlands shall be assessed thereto and deducted from the assessment upon the highlands and lands not benefited thereby.

CROW, C. J., PARKER, FULLERTON, and MORRIS, JJ., concur.