[No. 34828.   Department Two.   March 12, 1959.]

*In the Matter of the Petition of* THE CITY OF SEATTLE *to Acquire Land and Other Property.*[1]

*A. C. Van Soelen, G. Grant Wilcox,* and *John P. Harris,* for appellant.

*Mrs. Dolores K. Brothers* and *Mrs. Chester G. Mayrand, pro se.*

FINLEY, J.—The city of Seattle appeals from a judgment of the superior court annulling an assessment roll prepared by the board of eminent domain commissioners of Seattle.

[1]Reported in 336 P. (2d) 863.

Pursuant to a city ordinance, the city of Seattle condemned certain land for playground purposes. The eminent domain commissioners (hereinafter referred to as the commissioners) were then directed to prepare an assessment roll relative to the benefits accruing to the neighboring property owners. This was, of course, to facilitate payment of the compensation awarded for the property condemned. After a hearing, the court refused to approve the first assessment roll prepared. The commissioners were directed to prepare a new roll, and it is this second roll which is the subject of this appeal.

In the "spreading" of the second roll, the commissioners encountered three geographical obstacles. The proposed playground is situated in the Rainier Beach district of Seattle, only a few hundred yards from the southerly city limits. Lake Washington lies but a short distance to the east. The general terrain in this area is irregular and is marked by bluffs and a ravine.

The process by which the commissioners "spread" the second roll is as follows: After determining that there was no general benefit to the public as a whole, the commissioners concluded that children of the age for whom the playground was planned would travel probably a maximum distance of twenty-five hundred feet over accessible routes to use the facilities on the playground. The perimeter of the assessment district was outlined by measuring the walking distances over all accessible routes emanating from the playground to total distances of twenty-five hundred feet. Distances were measured with a steel rule on a scaled map over accessible routes and were checked by inspection in the field.

The commissioners also concluded that the amount of special benefit varied with the distances from the playground; they therefore established three zones of special benefit. The first zone includes those properties lying within fifteen hundred feet of the playground, assessed at the rate of sixty cents per front foot; the second includes those properties lying beyond fifteen hundred feet, but within two

thousand feet, of the proposed playground, assessed at fifty-four cents per front foot; the third zone includes those properties lying beyond two thousand feet, but within twenty-five hundred feet, of the proposed playground, assessed at forty-eight cents per front foot.

The trial court found that

" . . . certain properties farther away than 1500 feet by accessible routes from the said Block 5 are by reason of the level approach from them to such block benefited to a greater extent than those lying on the aforesaid high bluffs, which differences in accessibility and benefits are not fairly reflected in the assessment roll submitted." (Finding of Fact IV.)

The trial court concluded:

"That the proposed assessment roll is in certain respects arbitrarily drawn and has also been prepared upon a fundamentally wrong basis because cast by the 'ruler' without proper regard for the unusual features of the terrain and the resultant varying degrees of accessibility to the proposed playground." (Conclusion of Law II.)

It is the contention of the city that, since the property owners failed to offer any evidence that their property was not benefited in the amount of the assessment, the assessment roll should have been approved even though an arbitrary method was used in the preparation of the roll. We believe there is merit in this contention.

In *Gerlach v. Spokane* (1912), 68 Wash. 589, 124 Pac. 121, the court stated:

" . . . There are certain presumptions which of necessity must attend these proceedings; that is, that the improvement is a benefit . . . [citation], and that the finding of the commissioners and consequent assessment is fair . . . [citation]. It therefore follows, as a just conclusion, that, unless it be shown by the property owner that the assessment is greater than the benefit, or that it is not equal or ratable with other property similarly situated, and in such degree that the difference would seem to be arbitrary, and in fraud of the rights of the property owner, courts will not inquire into the manner of the assessment. . . ."

■ At the hearing on this second roll, the two commissioners who testified stated that it was their considered opinion that all properties assessed were benefited in the amount of the assessment. The property owners offered no evidence· to rebut this testimony. Their evidence was all offered to show that certain properties lying inside this assessment district were less accessible to the proposed playground than were other properties lying inside the district. However, the commissioners measured all distances over *accessible* walking routes. If there be any ratable difference in the amount of the assessment as between properties similarly situated, it seems to us such difference would fall into the *de minimis* category. Certainly it is not such a difference as "would seem to be arbitrary, and in fraud of the rights of the property owner."

For the foregoing reasons the judgment of the trial court should be reversed and the cause remanded for further proceedings consistent with the views expressed herein. It is so ordered.

· WEAVER, C. J., MALLERY, ROSELLINI, and FOSTER, JJ., concur.