The Mayor and Aldermen of Savannah *v.* Weed.

1. It is competent for the municipal authorities of the city of Savannah, under the powers conferred upon them by the charter of that city, in the improvement of its streets, to provide in a single ordinance for the pavement of several streets, a single street or a portion of a street, and to charge against the property of abutting lot owners two thirds of the cost of such improvement.

2. If, in making the apportionment of the cost of such improvement, the front foot rule be adopted, the assessment should be made in such manner as to impose upon the respective lot owners their proportionate shares of the entire cost, estimated according to the width of the respective streets upon which their lots may abut.

3. A power "to grade, pave, macadamize or otherwise improve any. portion of the width of any street in the said city, and to assess two thirds of the cost of such paving, grading, macadamizing or otherwise improving on the real estate abutting on each side of the street or lane improved," contemplates that in making such assessment, the paving, grading, macadamizing or otherwise improving of each street is to be regarded as a separate improvement; and in exercising such power, the city authorities must apportion the cost of such improvement according to the width of each particular street.   Hence, where the scheme of the ordinance under

which a proposed improvement is to be made contemplates the paving of a principal thoroughfare between two designated points, if in the execution of this scheme it becomes necessary to improve a portion of lateral streets, which being improved become component parts of such main thoroughfare, in making an apportionment of the cost of the entire improvement the city authorities must regard each of such lateral streets as separate, and assess against the respective abutting lot owners their several proportions of such cost according to the width of the particular street upon which their property happens to abut and their frontage thereon. August 16, 1895. By two Justices.

Affidavit of illegality. Before Judge FALLIGANT. Chatham superior court. December term, 1894.

An execution against Joseph D. Weed was levied for the amount assessed against his property as its part of the cost of paving and otherwise improving Bull street in Savannah; and he filed an affidavit of illegality. The issue thereby made was submitted, upon an agreement as to facts, to the judge without a jury, and he sustained the affidavit and dismissed the execution.

The ordinance of February 3, 1892, under which the improvement was made, was adopted under an act of the legislature, approved October 1, 1887. It directs the committee on streets and lanes of the city to construct a roadway on Bull street, from the south side of Harris street (said roadway to include the unpaved portions of Harris street around Madison square) to the north side of Gaston street, and also around said Madison square and Monterey square, and such portions of Harris, Charlton, Taylor, and Gordon streets as bound the two squares; and further, to pave the said roadway with sheet asphalt; that the roadway shall be of the width and dimensions set forth in the plans of said contemplated improvement, prepared by the assistant city engineer; that the committee shall also enclose the roadway with curbing, and do all the work in the way of grading, constructing drains and cross-drains, and all

other things incident to the improvements herein provided for; that after the total cost of the work shall have been ascertained, one third of such cost shall be paid out of the city treasury, and the other two thirds from the persons owning real estate fronting on the portions of the street mentioned to be improved, that is, one third from the owners of said property according to the frontage on each side of said portions of the street, and the *pro rata* amount of the cost of said work is hereby assessed against said abutting real estate and its owners; that the frontage of the intersecting streets and lanes shall be assessed as real estate abutting upon the portions of the street improved, and the mayor and aldermen shall be, for the purposes of this ordinance, the owner of said real estate so abutting, and shall pay from the city treasury its just *pro rata* as owner according to frontage, in addition to its one third of the entire cost.

The grounds of the affidavit of illegality are, in brief, that the assessment is illegal and void, because it includes in one single assessment the cost of building, constructing and paving roadways on several streets; that it is not limited to work alleged to have been done on the street on which defendant's property abuts; and that it is not *pro rata*, but is unfair, unjust, inequitable, illegal and void, because it regards the construction and paving of the several streets named in the ordinance, and which differ in width, as one entire piece of work, and owners of real estate abutting on the streets named in the ordinance are each assessed at the same rate, without regard to the width of the street on which their property abuts, or the cost of the work done thereon.

The following extract from a plat in the record shows the situation of the property and the streets in question:

The improvement was completed and the assessment and apportionment made under the ordinance before mentioned, and the roadway as laid includes Harris street south of the property of Weed, and the space around Madison square. The statement furnished to him with the bill for the amount assessed against his property, is a correct statement under the plan pursued by the city; the correctness of which plan he denies in his affidavit of illegality. Two thirds of the entire bill ($21,207) was apportioned on the property-owners and

the city, as follows: For 834.2 lineal feet frontage of intersecting streets and lanes, the city was charged $3,653.92; for 1,412.9 lineal feet frontage of the squares Madison and Monterey (the city being charged for squares as for intersecting streets), the amount charged the city is $6,188.68; for 2,594.7 lineal feet frontage of private property, the owners of the same are charged $11,365.13. Weed's property is on the northwest corner of Harris and Bull streets, with a Bull street exposure of 100 feet, and a Harris street exposure of 92.2 feet. Under an ordinance of January 8, 1890, parts of Bull and Harris streets were paved in that year, from the south line of Liberty street, on Bull street south to Madison square, thence on Harris street east to Drayton street. A portion of this improvement was east of Weed's property. This paving and improvement, in addition to the intersection of Bull and Harris streets, was of the following dimensions: On Bull street 443.8 lineal feet, and on Harris street, from the extension of the western line of lots abutting Bull street on the east to Drayton street, 603.78 lineal feet; the width of the improvement on Bull street was 44.3 feet, and the width of the improvement on Harris street was 30 feet. The cost of defraying the expense of this paving and improvement was collected by charging the property abutting on Bull street at the rate of $4.23 per front foot, and Weed, as the owner of this property, was charged at this rate and paid this assessment. The property abutting the improvements on Harris street from the extension of the western line of lots abutting Bull street on the east, to Drayton street, was charged at the rate of $3.60 per front foot, the assessment having been made in this manner by the mayor and aldermen and collected of the owners of the abutting property. The pavement laid under the ordinance of 1892, on Harris street south of Weed's property, is only 33 feet wide;

while that laid under the same ordinance on Bull street proper is 45 feet wide. In the assessment and apportionment no distinction is made between Weed's property and the property of the owners on Bull street proper. For example, the owner of the lot on the west side of Bull street, and bounded on the north by Charlton street, is charged for his frontage on Bull street at the rate of $4.38 per lineal foot, although the pavement in front of him is 45 feet wide. Weed and all owners of property covered by this ordinance are charged at the same rate.

The ordinance of January 8, 1890, before referred to, is entitled, "An ordinance to pave and improve certain portions of Bull and Harris streets in the city of Savannah, herein specified, and to make and collect assessments for the same, under the terms and provisions of an act of the General Assembly of the State of Georgia, approved October 1, 1887. The form of this ordinance is similar to that of 1892, but it authorizes the committee to have laid on Bull street from the south side of Liberty street to the south side of Harris street, and also on Harris street from the east side of Bull street to the west side of Drayton street, a pavement of sheet asphaltum not to exceed 45 feet in width on Bull street, and 42 feet on Harris street, and to place on said portions of Bull and Harris streets such new curbings, and have such drains made and grading and work done, as may be incident to the laying and completion of the pavement.

SAMUEL B. ADAMS, for plaintiff in error.

ERWIN, DUBIGNON & CHISHOLM and W. L. CLAY, contra.

ATKINSON, Justice.

The official report states fully the facts upon which the questions of law involved in this case depend.

1. By an act of the General Assembly, approved Oc-

tober 1st, 1887 (see Acts 1887, p. 537), the Mayor and Aldermen of the City of Savannah were authorized "to adopt at any time an ordinance requiring the grading, paving, macadamizing or otherwise improving for travel or drainage any of the streets or lanes of said city, and to assess two thirds of the cost of such paving, grading, macadamizing and otherwise improving, on the real estate abutting on each side of the street or lane improved"; and further "to grade, pave, macadamize or otherwise improve any portion of the width of any street in the said city, and to assess two thirds of the cost of such paving, grading, macadamizing and otherwise improving, on the real estate abutting on each side of the street or lane improved." The power conferred by this act is legally exercised, whether separate ordinances be passed for each street intended to be improved, or whether the improvement of several streets be provided for in one ordinance. The passage of the ordinance is simply the evidence that, according to the discretion vested in the mayor and aldermen, the improvement of the street or streets covered thereby is necessary to the welfare of the city, and we know of no reason why this declaration may not as well be made by a single ordinance to cover a number of streets, the improvement of which in the judgment of the city council is necessary, as it could be made to cover only a single street. The power to pass an ordinance for the improvement of any of the streets of the city, includes the power to improve any number of the streets. We think, therefore, that the objection to the ordinance, upon the ground that it contemplated the improvement of more than a single street and was consequently illegal and contrary to the charter power, is without merit.

2. The power to assess against abutting lot owners a proportionate share of the cost of a proposed improvement is expressed by the act in question as follows:

"and to, assess two thirds of the cost of such paving, grading, macadamizing and otherwise improving, on the real estate abutting on each side of the street or lane improved." It will be seen by reference to this language, that the legislature contemplated a ratable apportionment of the cost of such improvement among the respective lot owners *of the particular street improved.* We think this is the plain meaning of the words of the statute.   If it were necessary to assign any other reason for this conclusion, we think that this construction of the statute is eminently a just and equitable one; for if this rule did not prevail, and the city authorities should conclude to improve streets in different parts of the city, varying in width, and distribute the cost of the improvement among the abutting lot owners upon the frontage alone, without reference to the width of each particular street, it can easily be conceived that a case might arise in which, under the operation of such a rule, a lot owner whose lot fronted a thirty foot street would be required to pay as much as the owner of a lot with the same frontage on a street one hundred feet in width.  A purpose to impose upon property-owners a burden so manifestly unjust and inequitable will not, in the absence of a direct legislative expression to that effect, be imputed to the General Assembly.  The whole scheme of the act contemplates a ratable apportionment of the cost of improvement according to the width of the particular street improved, each street, for the purposes of the assessment, being a separate and distinct improvement.  If a particular street which is being improved should chance to vary in width, the mayor and aldermen would be authorized to apportion the entire cost of that particular improvement among the various abutting lot owners according to their frontage on the street, and without reference to the width of that particular portion of the street which lay immediately in front of their property.

3. It appears in this case, that the Mayor and Alder-men of the City of Savannah, having concluded to enter upon a scheme of street improvement, passed an ordinance providing for the paving of Bull street from the south side of Harris street, along Bull street around the intervening public squares and along the intervening lateral streets which it was necessary to improve in the execution of this scheme of improvement; the improvement to extend out along Bull street, and those portions of the intervening lateral streets fronting the several public squares, as far as Gaston street. The single ordinance covered all of Bull street between the designated points, and such portions of the lateral streets as formed a part of the continuous passage way around these several squares. In making an assessment for this improvement, that portion of the cost thereof which was apportioned amongst the several lot owners was distributed equally according to the front foot rule against each of them, without reference to the width of the several streets included in the scheme of the improvement. Under the operation of this system of apportionment, it occurs that the property of the defendant in error fronted upon that portion of Harris street leading into Bull which was encessary to be improved in the execution of this scheme for paving. Harris street immediately in front of his property was only thirty-three feet wide. The paving along Bull street proper was forty-five feet in width. So that this defendant in error was required to pay the same amount, according to his frontage, as a lot owner upon Bull street, where the paving was much broader, and consequently much more expensive. The effect of this assessment was not to distribute this cost equally and ratably among the lot owners, but was a discrimination in favor of those lot owners abutting on broad streets against those whose property abutted on narrow streets, with no corresponding advantage to the

latter. As we have seen heretofore, the power conferred upon the municipal corporation was to assess against the lot owner his ratable proportion according to the width of the *particular street* upon which his property abutted. The particular street, a portion of which was improved in this scheme of paving, upon which his property abutted, was a narrow street, and he was entitled to have the assessment for the cost of the improvement of that street apportioned according to his frontage thereon. It was insisted by counsel for the plaintiff in error, that these lateral streets were really and in fact parts of Bull street, and therefore subject to assessment as a Bull street improvement proper. We do not feel at liberty to take this view of this matter, for the reason that we do not think the facts appearing in the record justify such an assumption. Harris street, as a distinct highway, was as much recognized by the ordinance authorizing the improvement, as was Bull street itself. A reference to the plat which appears in the record, together with the agreed statement of facts likewise incorporated therein, will show that each of these streets is a separate public highway, though they lead the one into the other, so as, when paved, to form a continuous improved highway; yet they were none the less separate streets, and the charter provision is, not that the cost of the improvement shall be assessed according to the width of the streets improved, but according to the width of *the street* improved. The employment of the latter, instead of the former term, to our minds excludes the idea of an apportionment of the cost according to a general average of the width of the several streets and an assessment accordingly. We conclude, therefore, that the trial judge did not err in sustaining the illegality, and dismissing the levy of the execution.

Let the judgment of the court below be    *Affirmed.*