## Elder, et al. v. City of Richmond, et al.

(Decided February 6, 1920.)

Motion to Grant Injunction Refused by Circuit Judge.

1. Municipal Corporations—Street Improvement Ordinance—Plans and Specifications Need Not Be Incorporated.—Plans and specifications made by a city engineer under which streets are to be improved, if they are referred to and adopted as a part of the ordinance and are on file in the engineer's office, need not be incorporated in the ordinance providing for the street improvements, or published as a part of the ordinance.

2. Municipal Corporations—Street Improvements—Apportionment—Special Assessments.—Where an ordinance provides for the improvement of several streets under one contract, it is permissible for the council to make each street a unit and levy against abutting property on each street its proportionate part of the cost of the improvement on that street.

3. Municipal Corporations—Double Taxation—Special Assessment and General Tax for Street Improvement is Not Double Taxation.—Where a city levies a general street improvement tax on all the property in the city to liquidate a bonded indebtedness created for the purpose of improving streets, a special assessment thereafter made on property abutting on streets, the improvement of which is provided for in an ordinance distinct from the general levy ordinance will not be double taxation. Although if it should be made to appear that the special assessment was unequal, unreasonable or oppressive, or that the city council, for frivolous reasons, or corrupt purposes, had imposed it, the special assessment might amount to double taxation.

4. Municipal Corporations—When General Levy for Street Improvements and Special Assessment Therefor is Not Double Taxation.—Where a city issued bonds for sewer and street improvements and used a part of the bond issue for sewer improvements, setting apart the remainder for street improvements, and used it for the purpose of paying part of the cost of a special assessment made for street improvements, no question of double taxation can arise on account of the special assessment.

5. Municipal Corporations—Sewer and Streets Separate, Distinct Improvements.—An ordinance providing for sewer improvements

and street improvements makes provision for two distinct classes of improvement.

J. J. GREENLEAF for plaintiff.

JOHN C. CHENAULT for defendant.

OPINION BY CHIEF JUSTICE CARROLL—Overruling motion to grant injunction.

The plaintiff, Elder, for himself and other residents and taxpayers of the city of Richmond, brought this suit against the city and the board of council, seeking to have certain street improvement ordinances adopted by the council declared illegal and void, and to enjoin the council from letting street improvement contracts provided for in the ordinances.

On application to the judge of the Madison circuit court, he refused to grant the injunction sought, and the plaintiffs, Elder, and others, having brought the case before me, ask that I grant the injunction refused by the judge of the lower court.

Briefly, the facts are these: In 1917, the people of Richmond voted a bond issue of $150,000.00 for the purpose of building streets and sewers. After procuring the money on the bonds, the city council decided to invest $70,000.00 in the construction of sewers, and $80,000.00 in the construction of streets, and under this plan the $70,000.00 was invested in sewer improvements.

When it came, however, to making the street improvements contemplated, the council concluded that $80,000.00 was not sufficient to do the street improvement work desired, and thereupon adopted an ordinance for the improvement of certain named and described principal streets in the city in the manner provided for in the ordinance. The ordinance further provided in substance that one-third of the cost of the street improvements would be paid by the city out of the $80,000.00, and the other two-thirds should be paid by the abutting property owners on the streets to be improved.

In this suit, a number of reasons why the ordinance should be declared invalid and the letting of the contract enjoined are pointed out by counsel for Elder, but we think it only necessary in this opinion to consider those that are deemed of sufficient importance to merit discussion.

It is urged that because the plans and specifications for the street work, although adopted in the ordinance ordering the improvement and on file in the city engineer's office and spread upon the minute book of the council as a part of the adopted ordinance, were not actually incorporated in the ordinance when introduced, or published as a part of the ordinance in the newspapers, the ordinance and publication do not sufficiently comply with the law and are invalid.

The ordinance, after describing the streets to be improved and setting forth the kind of material to be used, further provided that "all of said work shall be done in accordance with the survey, plans and specifications prepared by S. F. Crecclius, city engineer, which are attached hereto and are hereby approved, adopted and made a part of this ordinance and recorded as a part of same upon the city minute book."

It was further provided in the ordinance that bids for the work should be made in accordance with the ordinance, plans and specifications, and that the work should be accepted, when completed in accordance with the plans and specifications.

The charter of cities of the fourth class, of which Richmond is one, although providing for the enactment and publication of street improvement ordinances, does not in terms require that the plans or specifications shall appear in full in the ordinance or in the publication, and in the absence of some mandatory, statutory direction or necessary inference therefrom, we do not think it essential to the validity of the ordinance that it should set out in full the plans or specifications, or that they should be published.

The plans and specifications for work like this could not be understood except by persons having experience or technical knowledge of such matters and, therefore, their incorporation in an ordinance or publication would be of no practical benefit to the general public. The plans and specifications in this case were made by the city engineer. They were referred to and adopted as a part of the ordinance and open to the inspection of any person desiring to examine them.

The ordinance set out with fullness and accuracy all the other facts necessary to its validity, and contained such information as would enable property owners and others to have a full understanding of the nature of the

improvements contemplated, and we do not think the failure to incorporate in the ordinance or have published with the ordinance the plans and specifications affected its validity.

The ordinance further provided that apportionment of the cost should be made on a basis which treated each street as a separate unit, or separate improvement; instead of adopting each block as a unit, or considering all the streets named in the ordinance as one improvement so that each piece of property in the block, or the whole improvement area, might be assessed its proportionate cost of the entire improvement; and counsel raises the question that the apportionment should be based on the ratio of the abutting feet to the total abutting feet of all the work provided for by the ordinance, or the abutting feet in the block rather than the ratio of the particular owners' abutting feet to the total number of abutting feet on the improved part of the street on which the property is located.

It is provided in section 3563, vol. 3, Kentucky Statutes, under which the improvements in the city were authorized to be made, that they "shall be made, except as hereinafter provided, at the exclusive cost of the owners of real estate abutting on such improvements, to be apportioned among and assessed upon the lots or parcels of real estate abutting and a tax shall be levied upon such lots or parcels of real estate for the payment of the cost assessed thereon."

The ordinance provided for the improvement of four streets at one and the same time and under one contract, and that the improvement "shall be made at the exclusive cost of the owners of real estate abutting on such improvement to be apportioned among and assessed upon the lots or parcels of real estate abutting feet on each of said streets," and we think this manner of assessing the cost improvement was authorized by the statute.

The statute also provides that the improvement shall be made at the cost of abutting owners and should be apportioned among them according to the abutting feet owned by each, but does not prescribe the unit. Therefore, we think it was permissible for the ordinance to provide that the owners of abutting property on each street should pay their proportionate cost of the improvement of such street. It appears to us that when a city under a statute, like the one here in question, has described cer-

tain streets that shall be improved, no matter how many there may be, it may make each street a unit and assess against the property abutting on each street its proportionate cost of the improvement of that particular street.

In providing for the improvement of streets by special assessment, the council should adopt that plan that will provide as fair and uniform a rule of assessment as is practicable under the circumstances, and when such a rule has been adopted by the municipal authorities as in this case, the courts will not interfere with their decision.

The city, as we have before said, issued, under authority of the vote of the people, bonds in the sum of $150,000.00 for the improvement of sewers and streets, and a tax to pay these bonds will be levied upon all the property in the city, including that, that will be subjected to the payment of the special tax for the improvement of particular streets. Accordingly, it is said that this amounts to double taxation on the property subject to this special improvement assessment.

It is true that the property that is subject to the payment of this special improvement tax will also be required to pay its proportionate part of the tax necessary to liquidate the bond issue and, therefore, if the bond issue or any part thereof had been expended in other street improvement, the property subject to the special assessment would be taxed twice for street improvements.

But this would not be double taxation in the meaning of the law. The special assessment only imposed a tax on the property abutting upon the streets actually reconstructed, and this property got the benefit of this special improvement. There is no inequality in the special assessment tax; it is borne equally by all classess of property abutting on the streets to be improved under the special assessment. In other words, all property situated alike bears its proportionate part and no more of this special assessment tax.

If a city levied a general tax on all the property in the city, to liquidate a bonded indebtedness, created for the purpose of improving the streets of a city, and it could not, in addition to this, levy special street improvement taxes to be paid by property abutting on streets to be improved, it is apparent that if the general tax was not sufficient to improve all the streets in the city, those that could not be improved out of the funds raised by the bond issue must be left unimproved, and this in many

instances would leave a city helpless to make needed street improvements. Such a condition as this ought not to exist, and need not under the law, because special assessments fairly made will not amount to double taxation, although there may be in addition thereto a general street improvement tax.

The question raised by counsel, although not heretofore considered by us, has been the subject of investigation by other courts. In Page and Jones, Taxation by Assessment, vol. 2, section 719, it is said: "Assessments are frequently attacked as amounting to double taxation when they are not really subject to such objection. Thus, if an assessment is levied for a part of the cost of the improvement and the rest of the cost of such improvement is to be paid for by general taxation, such general tax may be levied upon all the property in the public corporation, including that property which has already been assessed. An assessment of this sort is not invalid as amounting to double taxation."

In re Beechwood Avenue, O'Mara's Appeal 194 Pa. State 86, it appears that the city of Beechwood had issued street improvement bonds, to be paid by taxes levied on the property in the city. Thereafter, by ordinance, certain street improvements were directed to be made at the cost of abutting owners, and one of these abutting owners objected to the payment of the special assessment upon the ground that as his property was taxed to pay the bond issue, the special assessment amounted to double taxation.

The court, in answer to this objection, said:

"As to appellant's objection that by the assessment in question his property will be subjected also to taxation on account of the city bonds issued for said loan, and therefore to double taxation, it is sufficient to say that the latter is no ground for immunity from assessment for special benefits accruing from local improvements. Double taxation is not illegal unless it produces inequality as to other property similarly situated. No such allegation is made in this case."

Counsel call attention to the case of Shuey v. Trapp, 166 Ky. 696, as containing an intimation that a special assessment tax like that here involved amounts to double taxation, but an examination of that case will show that the question here presented was not before the court in

that case, nor does it decide that such an assessment as was here made would amount to double taxation.

Of course, a state of case might arise in which the plea of double taxation could be successfully raised by abutting owners whose lands were about to be subjected to the payment of a special assessment when there had theretofore been voted and they were required to pay their part of a general tax levy for the same general purposes as the special assessment tax.

As for example, when it was made to appear that the special assessment was unequal, unreasonable or oppressive, or that the city council, for frivolous reasons or corrupt purposes, had imposed it. But no such conditions appear in this record. It is admitted that the council acted in good faith and with an eye single to the best interest of the city.

But aside from what we have said, we hardly think the question of double taxation arises on the record. The bond issue of $150,000.00 was voted for sewer and street improvements, but no part of it was used in street improvements. The $70,000.00 that was used was put in sewer improvements, and a sewer improvement and tax therefor are distinct from a street improvement and tax therefor; so that when a property owner is required to pay a sewer improvement tax and a street improvement tax, the question of double taxation cannot come up, as there could be no double taxation in such a case.

It further appears that $80,000.00 of the bond issue is to be used by the city in street improvements and devoted to the payment of one-third of the cost of the street improvement, directed to be made by the ordinance. So that these complaining property owners are getting the whole benefit of all that part of the bond issue that was set apart for and that will be used in street improvements.

The city, out of this bond issue, is paying one-third of the cost of the street improvement, when the city could have charged these property owners with the full amount of the street improvement and used the $80,000.00 in other street improvements or for sewers.

It is also argued that there is such conflict between the statute under which the general bond issue was authorized and the statute under which the local assessment was authorized as to cast a doubt upon the right of the city to levy a special assessment tax. Section 3577,

under which the improvement was directed to be made, and the special assessment tax authorized to be levied, was enacted for the purpose of authorizing such a tax as was provided for by the ordinance here in question. This section, and the others relating to special assessments for particularly described street improvements, must be considered as entirely independent of other sections authorizing the issual of bonds for general improvements and the levy of a tax upon the property of the entire city to pay the bonds so issued.

Thus, keeping these two methods distinct, there appears to be no confusion or conflict between them. Each relates to and provides for a separate and distinct method of street improvement.

The ordinance, following the statute, provides that the city, in anticipation of the collection of the local assessment, may issue and sell improvement bonds, pledging for their payment the local tax with lien on the property and apply the proceeds to the payment of the particular improvement.

It further provides that said "bonds and interest coupons shall be payable exclusively out of funds actually paid to and collected by the city on account of the improvement taxes in anticipation of which the bonds are issued, and in no event shall the city be liable on any such bonds except to the extent of funds actually paid to it, as above set out."

It will thus be seen that the city does not really assume any liability on account of the issual of these bonds. It merely obligates itself to collect and apply to their payment the special assessment tax.

Judges Thomas, Clarke and Quin heard this motion with me, and concur in this opinion and also in the conclusion that the motion to grant the injunction should be overruled.