EFFIE N. LEAK AND HER HUSBAND, J. D. LEAK, v. THE TOWN OF WADESBORO ET AL.

(Filed 20 December, 1923.)

1. **Municipal Corporations—Cities and Towns—Streets—Improvements— Assessments.**

    In proceedings by petition by property owners of a city whose land abuts on streets to have the streets improved upon the assessment plan prescribed by statute, it is not required that the streets to be improved be then connecting, or that to constitute a single improvement there should be then a physical connection between the different portions of the designated area, if the municipal plan is to make them so; and a petition by the majority owners in number and frontage along the streets in the designated area, taken as a whole, is sufficient.

2. **Same—Discretionary Powers—Statutes.**

    It is within the discretionary power of the Legislature or of the municipality to which it is delegated to designate the area for street improvement upon the assessment plan (C. S., sec. 56, art. 9), and when such delegated power is exercised in good faith and is free from abuse, the courts, generally, will not interfere.

**3. Same—Ordinances—Bonds.**

It is not required by the various statutes on the subject that a bond ordinance of a municipality set forth in express terms the proportion of the cost of the proposed improvements which has been, or is to be, assessed against the property of each owner abutting upon the streets to be improved or the terms and method of making the payment, if the procedure follow the direction of the statutes relating to the subject. C. S., secs. 2937, 2938, 2942, 2938(4), 2141, 2708, this last section requiring, among other things, that the preliminary resolution designate by general description the improvements to be made and the street or streets, or part or parts thereof, whereon the work is to be done, and the proportion of cost to be assessed upon the abutting property, and the terms and manner of payment.

**4. Constitutional Law — Municipal Corporations — Cities and Towns — Streets—Assessments—Due Process—Appeal and Error—Statutes.**

The right of appeal to the courts being provided in case of dissatisfaction by an owner of land abutting on a street assessed by the governing body of a municipality for street improvement, the objection that the owner's property is taken for a public use in contravention of the due process clause of the Constitution is untenable. C. S., sec. 2714.

**5. Pleadings—Amendments—Courts.**

The trial judge is given authority to allow an amended answer to be filed in proceedings to assess owners of land abutting upon a city street to be improved by a municipality.

APPEAL by plaintiffs from *Harding, J.,* at the Special July Term, 1923, of ANSON.

On 14 February, 1923, by virtue of C. S., ch. 56, art. 9, property owners presented to the commissioners of Wadesboro a petition requesting that certain streets, including Depot Road, be improved and permanently paved and that a definite percentage of the total cost, exclusive of the cost of improving street intersections, be assessed against abutting property. On 14 March, 1923, at a special meeting of the commissioners an ordinance was introduced to authorize $275,000 of bonds for the purpose of improving all the streets named in the petition and to provide for the levy of an annual tax to pay the principal and interest of the bonds as they matured. The ordinance purports to comply with the provisions of C. S., ch. 56, art. 26, as amended by chapter 106, Public Laws, Extra Session 1921. Before the ordinance was acted on a statement of indebtedness sworn to was duly filed pursuant to a resolution as directed by C. S., sec. 2943, as amended; and at a meeting held on 16 March, the bond ordinance was duly adopted and the clerk of the board was directed to make due publication of the ordinance and notice of its adoption as provided by C. S., sec. 2944, as amended, and to post the ordinance at the courthouse door and four other public places in the town.

It was admitted:

1. That a majority of the landowners whose lands abut on the streets proposed to be paved set out in the petition as a whole have signed the petition, and that they represent a majority of the lineal foot frontage on such streets.

2. That a majority of the landowners whose lands abut on the street leading from the Atlantic Coast Line Railroad to the intersection of that road (whether known as Depot Street or Washington Street) with Martin Street have not signed the petition, and that a majority of those owners representing a majority of the lineal foot frontage on said street have not signed the petition.

3. That the lineal foot frontage along Depot Street and Washington Street from the Atlantic Coast Line Railroad to Martin Street is 7,254 feet.

4. That no person owning lands on Barrington Street has signed the petition.

5. That certain streets had formerly been paved, and that there is a road beginning at the end of Washington Street which is sometimes called Washington Street and sometimes called Depot Street or Depot Road, which constitutes a continuous line of traffic with Washington Street from Martin Street to the Atlantic Coast Line Railroad.

6. That the improvements set forth in the admissions were made pursuant to authority vested in the commissioners of the town of Wadesboro, under chapter 265 of the Public Laws of 1909.

7. That the boundaries of the town of Wadesboro have been changed from time to time, as shown by the original charter and amendments thereto, by the act of the Legislature incorporated therein, chapter 213, Public Laws of 1907, chapter 26 of the Public Laws of 1891.

8. That under the authority of the town charter in 1907 the corporate limits of the town of Wadesboro were extended to embrace all of the territory on which the so-called Depot Street is situated.

9. That the yellow lines on the map attached represent the location of the improvements which the commissioners of the town of Wadesboro propose to make and contemplate making.

10. That the red lines on the map represent the location of streets which were improved under the act of 1909 and the amendments thereto.

11. That the four blocks heretofore improved are 99 yards square. It is admitted that Washington Street extends from A to B, and that the Depot Road extends from B to C, as shown on the map marked "Exhibit A."

12. That all the charters of the town of Wadesboro and the amendments thereto are in evidence.

13. That paragraph 3 of the plaintiffs' complaint was introduced in evidence by the defendants for the purpose of showing that the deeds mentioned therein referred to the Depot Road and the new Depot Road, and made it a boundary line in the description.

The following is the verdict:

"Is the Depot Road from the northern end of Washington Street to the Atlantic Coast Line Railroad a public street of the town of Wadesboro? Answer: 'Yes.'"

His Honor held upon the pleadings, admissions, and verdict that the petition was sufficient in law, that the bond ordinance was valid, and that the question of the legality of the assessment was not properly before the court, and should be hereafter determined in the manner provided. Judgment for defendants. Appeal by plaintiffs.

*John T. Bennett, F. L. Dunlap, J. A. Lockhart, and McLendon & Covington for plaintiffs.*
*John C. Sikes and Caudle & Pruette for defendants.*

ADAMS, J. According to the verdict, Depot Road, which extends from Washington Street to the track of the Atlantic Coast Line Railroad, is a public street in Wadesboro. The plaintiff owns property abutting each side of Depot Road and brings this action to vacate and nullify an ordinance adopted by the defendant authorizing municipal bonds in the sum of $275,000 for the improvement of certain streets, and urges various objections to the sufficiency of the ordinance.

The plaintiff first contends that Depot Road makes no physical connection with the other streets to which the ordinance relates, and that the improvement of streets which are not contiguous involves the unlawful consolidation of disconnected improvements. Several years before the ordinance in question was adopted the defendant, pursuant to the provisions of chapter 265 of the Private Laws of 1909, improved a part of six streets near the center of the town, and its present purpose is to pave other streets so as to combine all the improvements, past and prospective, into a constituent whole. To this end the pavement of Depot Road is to be connected at the intersection of Washington and Martin streets with the improvement made there under the act of 1909.

When an improvement of streets by a municipal corporation constitutes a single scheme, the ordinance may provide for the pavement of several streets, a single street, or a portion of a street; and when streets are practically similar and are to be paved in the same manner and with the same material, and are grouped as a unit, in the absence of provision to the contrary, they may generally be treated as a single improvement. McQuillin says that to constitute a single improvement,

physical connection between the different portions is not absolutely essential. 5 Mun. Corp., sec. 2084. In 25 R. C. L., 155 (69), it is said: "It is a general rule applicable in most jurisdictions that only one improvement shall be embraced in a single ordinance. In applying this rule it has been held that an ordinance providing for the paving of several streets and alleys, and parts of streets, with the same material, and in the same way, is not obnoxious to the objection that it embraces more than one improvement, although there may be a difference in the width of the streets proposed to be paved, and the cost of paving certain railway tracks is excluded from the assessment in respect of some of the streets." And in Elliott on Roads and Streets, sec. 694: "It is also held that the legislative decision, whether by the Legislature itself or the municipality to which it has delegated the authority, as to what territory shall compose the district and what improvements shall be included in one general assessment, is conclusive upon the judiciary. Where the statute forbids, either expressly or by implication, the local officers from including more than one improvement in a single order of assessment, they have no authority to provide for more than one improvement. It would seem to be in harmony with the general rule that prevails in cases where the authority exercised is purely statutory, that two distinct and radically different improvements cannot be included in one general order of assessment unless by express words or clear implication it is authorized by statute. Improvements are not, however, necessarily distinct and different because different roads or different streets are included, for it may well be that the system is a single and uniform one, although it embraces more than one street. If, in fact, the improvement is a unity, an assessment may be valid, although it embraces in its line more than one street or road. It may often happen that in order to secure a complete and effective system it is necessary to construct a main line with branches, or to improve two or more streets at once so as to secure a uniformity of grade, and in these, or similar instances, there is no reason why the system may not be considered as a single improvement, except, of course, where the statute supplies a reason for a different rule."

In *Springfield v. Green,* 11 N. E. (Ill.), 261, the city adopted an ordinance providing for the pavement of a large number of its streets and alleys, and the ordinance was assailed on the ground that it embraced more than one improvement. The Court said: "We do not think this is true in point of fact. While many streets and parts of streets are embraced in the scheme of improvement adopted by the city, yet we regard them all as but parts of the same improvement. The city authorities, in adopting the ordinance, must have found, as a matter of

fact, that those streets and parts of streets were so similarly situated
with respect to the improvement proposed to be made as to justify
treating them as parts of a common enterprise and single improvement,
and from the record before us we think they were justified in doing so.
They were all to be paved with the same material, and in the same
way; and the fact that there was a difference of a few feet in the width
of some of them, and that the cost of paving the 'railway tracks in
others was to be excluded from the estimate, should, in our opinion,
make no difference in this respect. The similarity of the improvement
proposed to be made, and the situation of the property to be assessed,
with respect to it, afford a more satisfactory test as to whether they
might all be embraced in a common scheme, as one improvement, than
their actual connection or physical contact with one another. It is
true, expressions are to be found in one or two cases looking in a con-
trary direction, but these expressions were made *in arguendo* merely,
and not for the purpose of laying down any rule on the subject. So
far as the actual decisions of this Court go, they support the contrary
view, and are in perfect harmony with what is here said. *Prout v.
People,* 83 Ill., 155; *People v. Sherman, id.,* 167; *Ricketts v. Hyde
Park,* 85 Ill., 110." See, also, 4 McQuillin's Mun. Corp., sec. 1879;
*Adams County v. Quincy,* 6 L. R. A., 155; *Mayor v. Weed,* 23 S. E.
(Ga.), 900; *Lewis v. Seattle,* 69 Pac. (Wash.), 393; *Wilder v. Cincin-
nati,* 26 Ohio St., 284.

In the statutes under which the defendant is proceeding there is
nothing to contravene the foregoing principles. In analogy to taxing
districts, the area in which these improvements are to be made may be
designated by the Legislature or by the local authorities to whom may
be delegated the power to say what territory shall be included in each
improvement; and when such delegated power is exercised in good faith
and is free from abuse the courts will generally be slow to interfere.
C. S., ch. 56; Public Laws Ex. Sess. 1921, ch. 106; *Asheville v. Trust
Co.,* 143 N. C., 360; *Justice v. Asheville,* 161 N. C., 62; *Felmet v. Can-
ton,* 177 N. C., 52; *Durham v. Pub. Ser. Co.,* 182 N. C., 333; *Gunter
v. Sanford, ante,* 452. Upon consideration of our statutes and the
principles of law applicable to the facts disclosed by the record, we are
unable to uphold the plaintiffs' contention that the defendants are at-
tempting to consolidate several unrelated improvements in violation
of law, or that there is a fatal want of physical connection between
Depot Road and the other streets or, taking all the territory, a defi-
ciency in the requisite number of lineal feet of frontage.

The plaintiffs insist also that the ordinance is invalid because it
does not state definitely the proportion of the cost of the proposed

improvements which has been or is to be assessed against the property abutting on the improvements and the terms and method of making payment.

The Municipal Finance Act provides that a municipality may issue its bonds for specified purposes when properly authorized by an ordinance passed by the governing body. C. S., secs. 2937, 2938. If the bonds are to be issued for local improvements, one-fourth the cost of which at least (exclusive of the cost of paving at street intersections) has been or is to be specially assessed, the ordinance shall take effect upon its passage without being submitted to the qualified voters. C. S., sec. 2938. It need not set forth the location of the improvement except as prescribed by section 2942. C. S., sec. 2938 (4). Section 2141 is as follows: "In cases where a petition of property owners is required by law for the making of local improvements, a bond ordinance authorizing bonds for such local improvements may be passed before any such petition is made, but no bonds for the local improvements in respect of which such petitions are required shall be issued under the ordinance, nor shall any temporary loan be contracted in anticipation of the issuance of such bonds, unless and until such petitions are made, and then only up to the actual or estimated amount of the cost of the work petitioned for. The determination of the governing body as to the actual or estimated cost of work so petitioned for shall be conclusive in any action involving the validity of bonds or notes or other indebtedness. The bond ordinance may be made to take effect upon its passage, notwithstanding that the necessary petitions for the local improvements have not been filed: *Provided,* that it appears upon the face of the ordinance that one-fourth or some greater proportion of the cost, exclusive of the cost of work at street intersections, has been or is to be assessed." The substance of the proviso is embodied in the ordinance.

The cost to be borne by the owners of property is to be determined as provided elsewhere. A preliminary resolution shall designate by a general description the improvement to be made and the street or streets or part or parts thereof whereon the work is to be done, and shall specify the proportion of the cost to be assessed upon the abutting property and the terms and manner of payment. C. S., sec. 2708. Other sections provide for ascertaining the amount of and levying assessments, with the right of appeal to the Superior Court in case of dissatisfaction by any person against whom an assessment is made. Section 2714. In *Gunter v. Sanford, supra,* the subject is discussed and some of the controlling authorities are cited. The reasoning on which the decision is based need not be repeated here. We think it clear that omission of the proposed cost does not invalidate the ordinance under consideration.

44—186

What we have said with respect to the right of appeal disposes of the additional objection that the plaintiff's property may be taken without due process of law. *Brown v. Hillsboro,* 185 N. C., 370; *Gunter v. Sanford, supra.*

Several of the remaining exceptions were abandoned on the argument. We have examined those relied on and find them untenable. The trial judge had the right to allow an amended answer to be filed, and the question of the clerk's authority need not be considered. *Brown v. Hillsboro, supra.*

We find no error which entitles the plaintiff to a new trial.

No error.