## Little, et ux. v. Town of Southgate, et al.

(Decided October 14, 1927.)

### Appeal from Campbell Circuit Court.

1. Constitutional Law.—Town ordinance for construction of sewer system, assessing abutting property owners on basis of pro rata part of entire lineal feet of sewer system throughout town, held not to take property illegally or without due process of law.

2. Municipal Corporations.—Courts cannot interfere with discretion of town authorities in enacting ordinance for assessing property for construction of sewer system, so long as they do not act arbitrarily or erroneously.

3. Municipal Corporations.—Town ordinance for construction of sewer system, permitting any property owner to elect within certain period to pay assessment in equal installments under 10-year bond plan, as prescribed in Ky. Stats., sec. 3706, which requires bonds to be issued by town, without containing exclusion or limitation of town's liability for payment of bonds, authorized creation of debt of town, which, with other outstanding legal indebtedness, would exceed lawful limits without election of people approving it, and was invalid.

BARBOUR & BASSMAN for appellants.

JAMES B. MILLIKEN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Southgate, in Campbell county, is a town of the sixth class located near Newport, and with other smaller sized suburban cities surrounding it. It voted bonds at an election duly called for the purpose, the proceeds from which paid for the construction of a large outfall sewer running through the city along a natural drain, and the same sewer also ran through adjoining municipalities, including Newport. Southgate covers an area of about 160 acres, the topography of which is rough, and portions of it lie on either side of the drain along which the outfall sewer was constructed. By a general ordinance, enacted by the board of trustees of Southgate after the outfall sewer was so constructed through the town, provisions were made for constructing a sewer system

throughout the town and connecting it with the outfall sewer by five other lateral ones, each of which carried the drainage from the other feeding sewers covering the different watersheds, so to speak, into which the town was divided in the ordinance providing for the construction of the entire system. It was also prescribed in the ordinance that the cost of the entire construction should be at the expense of the abutting property owners and on the 10-year plan, at the choice of the property owner, as is provided by section 3706 of our present Statutes. Bids for the constrution were advertised, and at the letting the appellees and defendants below John B. McLane & Co. obtained the contract at the total cost of $70,058.35.

The town through its proper officers, was about to enter into contract with the successful bidders, when appellants and plaintiffs below, G. R. Little and his wife, Mabel Little, filed this equity action against the town, its trustees, and McLane & Co. to enjoin the entering into the contract or the construction of the sewers upon the two grounds that (1) the ordinance illegally divided the territory into watershed districts, which were disconnected with other parts of the system, except in so far as the drainage into the outfall sewer produced a physical connection, and that the cost of construction on some of the streets in other watershed districts into which the ordinance divided the town was much higher than the cost in the subdivision in which plaintiffs' property was located, and that to require them to be assessed their pro rata part of the entire lineal feet of sewerage to be constructed throughout the town would take their property illegally and without due process of law; and (2) that the cost of construction, under the statute and the ordinance, supra, of the town, would create a debt against the latter which, with other outstanding legal indebtedness, would exceed the lawful limits under our Constitution, without an election by the people approving the indebtedness, and which latter had not been done. The court sustained the demurrer filed to the petition by defendants, and plaintiffs declined to plead further, when the petition was dismissed, and from that judgment they prosecute this appeal. The two grounds so relied on in the petition will be disposed of separately and in the order named.

In support of ground (1) plaintiffs cite and rely on the domestic cases of Haffey v. Letcher, 9 Ky. Law Rep. 286; Wickliffe v. Greenville, 170 Ky. 528, 186 S. W. 476;

Shaver v. Rice, 209 Ky. 467, 273 S. W. 48, and Blanton v. Town of Wallins, 218 Ky. 295, 291 S. W. 295. The Haffey case was an opinion by our old superior court, and the reference to it contains nothing but the syllabi, from which we fail to discover any application it has to the question involved. The same inapplicability may be said with reference to the other three cited cases, which are opinions from this court, and in neither of them was the question as to the duty of the respective municipalities with reference to the prescribing of units for the proposed improvement involved. On the contrary, we held in effect in the case of Elder v. Citiy of Richmond, 186 Ky. 706, 218 S. W. 239, that a municipality might include in one improvement ordinance as many streets or units to be improved as it saw proper, and might apportion the cost against the abutting property measured by the total length of the improvement, and therein in effect also held that the cost of the improvement immediately in front of a particular lot, as thus apportioned, was not affected by either the increased or diminished cost of the same character of improvement in other portions of the territory covered by the whole improvement. The opinions of this court are numerous approving an adopted plan, where a number of sewers were ordered to be constructed in the same manner by a single ordinance, and the cost of all of the improvement was apportioned according to the frontage of the abutting property or the surface of benefited property as the case might be. Those opinions are adjudications that it is competent for a municipality (and especially the smaller ones), in ordering an improvement equally beneficial to the entire community, to include the whole territory in one unit and opportion the cost of the abutting property accordingly. See Andrews Asphalt Paving Company v. Brammell, et al. 221 Ky. 323, 298 S. W.—.

. At one time there was considerable conflict in the opinions upon the question as to the extent that statutes and municipal authorities could go in the formatioin of a unit of improvement, but latterly the courts have largely receded from the strictness adhered to by some of them, and the general rule now seems to be as stated in the text of 25 R. C. L. 108, par. 26, that:

> "It is within the power of the Legislature to create a special taxing district, and it is asserted with substantial unanimity and great clearness by the

courts in this country that, unless the nature of the case precludes it, the power to determine the confines of a taxing district for any particular burden is purely one of legislative discretion, whether it is defined by the Legislature or a city council acting under statute. The question of the property benefited by a local improvement is one of fact, and the action of the Legislature, or of a city council, acting under statutory authority, in fixing the boundaries, is conclusive, unless it is obviously erroneous and arbitrary. Such action cannot be reviewed in the courts, upon the ground that the Legislature or city council acted unjustly or without appropriate and adequate reason; and a fortiori such question is conclusive against all collateral attacks. But if, in the combination of streets and the like, they shall be so separate and distinct that the making of one could not reasonably be said to benefit property situated upon the other, their combination would be clearly violative of the rule governing in such cases. The Legislature may, instead of fixing and prescribing the taxing districts itself, refer the matter to commissioners or local boards or bodies for their ascertainment and determination, and in such case the substituted bodies possess and exercise legislative functions, and their action must be deemed as conclusive upon the subject as if the Legislature had exercised the authority directly.''

A great many cases from the highest courts of a number of states and from the Supreme Court of the United States are cited in the notes, and they support the text, and which is also done in the cases of Mayor, etc., of Savannah v. Weed, 96 Ga. 670, 23 S. E. 900; City of Springfield v. Green, 120 Ill. 269, 11 N. E. 261; Payne v. South Springfield, 161 Ill. 285, 44 N. E. 105; Walker v. People, 170 Ill. 410, 48 N. E. 1010, and Leak v. Wadesboro, 186 N. C. 683, 121 S. E. 12. The general rule of the last-cited cases is thus stated in the Walker case:

"Here, as we understand the ordinance, the village undertook to establish by one ordinance a connected system of drains and sewers for the entire village. The improvement was in no sense a double improvement, but it was a single improvement, extending over different streets of the village.''

The other cases announce the same doctrine, and the reasoning supporting it is especially convincing, where the improvement is calculated to benefit and enhance the health of the entire territory covered by it equally and alike, as is true with reference to sanitary sewers. The inhabitants of one part of the town (or, in this case, in each watershed) are as much benefited by making other portions of the town clean and sanitary as they are from the construction of such sewers in their own circumscribed territory. There is nothing in the ordinance, nor any averment in the petition, that the trustees of the town of Southgate, in enacting the ordinance in question, acted either erroneously or arbitrarily, and under the authorities, supra, courts cannot interfere with their discretion, so long as such erroneous or arbitrary action is wanting. We therefore conclude that the trial court properly held ground (1) insufficient.

2. Section 3643-1 to and including 3643-7, being parts of the charters of cities of the fifth class, in so far as the question here involved is concerned, are substantially the same as section 3706, which is the part of charter of sixth-class towns relating to the construction of improvements of the character here involved. Section 3643-5 prescribes that in fifth-class cities the bonds to be issued by the city in payment of the cost of construction under the 10-year plan by the abutting property owner shall be "the bonds of the city," and the same provision is made under the same circumstances in section 3706, except the bonds are therein called "the bonds of the town," and in each classification of municipalities the statute provides that the bonds shall be payable out of the assessment against the abutting property, which shall be collected by the city and known as the "street improvement fund."

In the case of Schuster v. City Council of Oakdale, 180 Ky. 760, 203 S. W. 715, we held that such bonds issued by the city of Oakdale, belonging to the fifth class, were obligations of the city, and created a personal indebtedness against it, notwithstanding the street improvement fund was set apart for their payment, and that if the cost of the improvement, or it with prior legally contracted indebtedness, made an aggregate debt of the city beyond the limits of the constitutional provisions without a vote of the people for the purpose, it was void. The same was also held in the case of Castle v. City of Louisa, 187 Ky.

397, 219 S. W. 439, which also involved charters of the fifth-class cities. But in the Castle case the ordinance prescribing for the improvement expressly enacted that the bonds should "not be issued upon the faith and credit of the city of Louisa, . . . but the faith and credit of the city of Louisa shall be pledged for the payment of the sums realized upon the apportionment assessed against the property," and it was further ordained that:

> "Said bonds shall be payable and redeemable, not on the faith and credit of the said city, but out of, and secured by a lien on the assessments to be made and apportioned against said lots and parts of lots, or lands fronting or abutting or bordering upon the said streets and public ways herein ordered to be improved."

It was further provided in the ordinance, in substance, that the city would collect from the property owners their annual assessments and place the amounts to the credit of the street improvement fund to be afterwards paid by the city to the bondholder. It was held by us in that case that it was competent for the city to so provide or ordain in its ordinance ordering the improvement, and, when done, that bonds, issued by the city would not create an indebtedness against it, so as to curtail its authority to create debts for the city without a vote of the people.

The ordinance in the Oakdale case contained no such limitations upon the obligatory effects of the bonds issued by the city, and it was held that they created an indebtedness which the city could be compelled to pay, notwithstanding it also possessed the right to later reimburse itself out of the proceeds of the bonds, when collected from the property owners. It will be observed that the opposite conclusion was reached in the Castle case, which was only because of the difference in the terms of the respective ordinances.

In this case the ordinance ordering the improvement contains no such exclusion or limitation of the liability of the town of Southgate for the payment of the bonds to be issued by it when the sewerage system is completed. The only provision therein with reference thereto is that:

> "But any of said property owners may elect within the said 30-day period to pay said assessment

in equal installments under the 10-year bond plan, as prescribed in section 3706 of the Kentucky Statutes.''

That plan, as we have seen, requires the bonds to be issued by the town, and which in substance, is the same as for the issuing of similar bonds by cities of the fifth class, which, as we have seen, was held in the Oakdale case, supra, to create a municipal debt. The same must necessarily follow in this case, but which could have been eliminated if the ordinance had provided to the contrary, as was done in the Castle case. No such provisions are found in the ordinance in this case, and we feel constrained to hold that, inasmuch as the second paragraph of the petition disclosed the facts as above outlined, the court erred in sustaining the demurrer thereto. Whether it would be competent for the city to now amend its ordinance providing for the issual of the improvement bonds on the ten-year plan, if the owner of the property does not pay in cash, by expressly prescribing against its personal liability and making the same provisions in the bonds themselves: Provided the bidder expressly agreed thereto, and to thereby cure the defects pointed out, is a question that cannot be decided on this appeal, since it is not presented by the record.

Wherefore the judgment is reversed, with directions to set it aside and to sustain the demurrer to the first paragraph of the petition, but to overrule it as to its second paragraph and for further proceedings consistent with this opinion.