## City of Hazard v. Adams et al.

(Decided May 21, 1929.)

J. K. P. TURNER for appellant.

W. A. STANFILL for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing in part and affirming in part.

In the East End addition to the city of Hazard, East Main street and Maple street run approximately east and west. What is called the "Old County Road," north of East Main street, runs in the same general direction. Elm street extends north from Maple street across East Main street to the "Old County Road." Bisecting this area is Big Bottom branch, having quite a large channel. It flows southwestwardly, crossing Main street; thence through the property of the Hazard Laundry Company and across Elm street at an angle of 45 degrees, about midway between Maple and East Main streets; and further on crosses Maple street almost directly.

The appellee G. M. Adams owns property on the northwest corner of Maple and Elm streets, fronting 50 feet on Maple street, and 150 feet on Elm street. The appellee Goodloe Combs owns similar property on the northeast corner. The appellee Hazard Laundry Company owns property on the southeast corner of East Main street and Elm street, fronting 50 feet on East Main street, and 125 feet on Elm street. The appellees H. C. Faulkner and W. E. Faulkner own property on the southwest corner of East Main and Elm streets, fronting 175 feet on East Main street and 125 feet on Elm street. T. D. Draughan owns property on the northeast corner of East Main and Elm streets, and one Combs (not the appellee) owns the property on the opposite corner.

On July 17, 1922, the council of the city of Hazard passed an ordinance for the improvement of a number of streets of the city, the cost to be borne by abutting property owners. It designated Elm street as district No. 39, and provided for its construction throughout its entire length from Maple street to the "County Road," a distance of approximately 425 feet. Maple street was divided into three districts, district No. 32 being from Elm street to its intersection with East Main street; district No. 33 being from Elm street to its intersection with Spring street. The ordinance provided that the cost of the improvement should be borne by the property owners in each district, according to the number of front feet abutting thereon; and further provided that "the cost of each district shall be taken separately and assessed against the property abutting on each district, street intersections to be paid for by the City of Hazard."

A contract was entered into between the city and J. S. Kelly, contractor, for the construction of these streets on May 5, 1924. It became necessary, in the construction of the streets, to build large concrete culverts over Big Bottom branch. The cost of the culvert across Elm street was $1,390.12, of which $1,327 was assessed against the appellees herein. For some unexplained reason the city did not require the contractor to build Elm street from East Main to "Old County Road," a distance of 110 feet. The appellees made no objection to paying for the street improvement, but they did object to bearing the cost of these culverts, on the ground that there was no provision in the ordinance for their construction, and that the city had for several years maintained bridges across the stream and the construction could not be considered original work. They further objected because the contractor was not required to complete his contract, which resulted in the release by the city of Draughan and the owner of the property on the opposite corner of any part of the cost of the culvert. It was further claimed by the Faulkners and the Hazard Laundry Company that they had within two years of the enactment of this ordinance, been required to pay for the construction of East Main street at a cost in excess of 50 per cent. of the value of the property abutting on Elm and East Main streets. This action was instituted to enjoin the enforcement of liens against their property to the extent of the cost of the culverts.

■ While the ordinances do not in express terms provide for the construction of culverts, they do provide for the construction of the streets in accordance with the plans and specifications of the city engineer, which included the culverts. Such plans did not have to be incorporated in the ordinance or published therewith. Elder v. City of Richmond, 186 Ky. 706, 218 S. W. 239. Manifestly, the improvement contemplated all construction necessary and indispensable to a completed street, and these culverts, although of large dimensions (4 by 5 by .75 feet), and costly to erect, were essential. There could have been no street without bridging the stream in some manner. The facts appearing in Wendt v. Tucker, 185 Ky. 626, 216 S. W. 61, are not materially different from those presented in this case, and the law therein declared is entirely applicable. See also City of Covington v. Sullivan, 172 Ky. 534, 189 S. W. 709; Janutola & Com-

adori Const. Co. v. Taulbee, 211 Ky. 356, 277 S. W. 477 (involving construction of East Main street, of Hazard); Board of Councilmen, etc., v. Jillson, 225 Ky. 61, 7 S. W. (2d) 859. The construction of the culverts and the assessments for the cost against the property holders were duly authorized, and it cannot be said that the inclusion of their cost in the street assessments is depriving the owners of abutting lands of their property without due process of law, as appellees contend.

■ The city contends that the entire cost of the Elm street culvert should have been imposed upon the property abutting that street between Maple and East Main. The special chancellor who tried this case was of the opinion that only five-sevenths of this cost should be assessed against that property and that the remaining two-sevenths should be borne by the city and paid out of the general funds. The ordinance provides that the cost of the street from beginning to end shall be considered a unit and apportioned accordingly. The court did not err in so apportioning this extraordinary cost, for had the entire street been constructed according to the ordinance and contract, appellees' share would have been in that proportion.

The effect of the judgment was to relieve Adams and Combs each of $103.76, and to charge them with $259.38 (which cost includes Maple street culvert), for which sums, with interest from December 11, 1924, their property was adjudged to be in lien. Appellees Faulkner and the Hazard Laundry Company were each relieved of $202.62, being the entire cost of the culvert thus apportioned to them, for the reason that this assessment added to that made for the construction of East Main street was in excess of 50 per cent. of the value of the lot.

The appellees contend that if the construction of the culvert was chargeable to the property abutting on the street, that between East Main street and the Old County Road should be assessed its proportionate part. As to whether or not this was chargeable to the city or to those property holders is not now before us, for the holders of that property are not parties to the suit. The city in this appeal is only contending that the entire cost should be assessed against the property between the other two streets which belongs to appellees. The contention of appellees that they should be relieved altogether of this cost because the street was not constructed its entire length and the entire cost apportioned

accordingly cannot be considered, as there is no cross-appeal by them.

■ Section 3570 of the Statutes provides, in part: "But no such improvement shall be ordered against property which has been assessed to the extent of 50% of the value thereof, for the period of two years from the date of the last assessment."

The ordinance for the improvement of East Main street was enacted early in 1920, and the levy made in 1921. See Janutola, etc., v. Taulbee, supra. The ordinance ordering the improvement of Elm street was enacted finally on July 17, 1922; and while the assessment was not levied until December 9, 1924, yet since the improvement was ordered within two years of the previous assessment, the amount so assessed must be taken into consideration in determining the correctness of charging the same property with or relieving it of the proportional cost of the culvert, also including in the calculation the cost of constructing Elm street (excluding the culvert), the payment of which has without objection been assumed by the laundry company.

As stated, the laundry company's property fronted East Main street 50 feet and abutted Elm street 150 feet, and that of the Faulkners fronted 175 feet on East Main and abutted Elm street 125 feet. The lower court considered the value of one lot of each fronting 25 feet on East Main street. The city insists this was error, and the respective property should be considered as an entirety and not by 25-foot parcels. That must be determined.

In 1911, the area in which these streets were built was laid off in streets and 25-foot lots and designated as the East End addition to the town of Hazard. The Hazard Laundry Company property was designated as lots 1 and 2 in block 7, No. 1 being on the corner abutting Elm street. The Faulkners' property consists of seven original lots designated as Nos. 15 to 22, inclusive, in block 5; lot No. 22 abutting Elm street.

The laundry company's property appears to be just as it was when platted and sold, except that the creek has been covered by a culvert. It has never been fenced, used, or otherwise treated as a unit. But whether considered together or separately, the result is the same.

There is an arbitrary statement in the evidence that the assessments for improvement of both streets was more than 50 per cent. of the value of both of the laundry

company's lots; but the only specific evidence of value is that both lots, including the covering of the creek, cost $3,000. The East Main street assessment for both lots was $729.82, and the cost of Elm street construction already paid or assumed is $829.46—a total of $1,559.28. If only the 25-foot corner lot be considered, the combined assessment against it would be $1,194.37, with a valuation of $1,500. Manifestly, no part of the cost of the culvert being objected to could be assessed against the property.

A different condition exists as to the Faulkner property. The only evidence in the record respecting this matter is that of Judge Faulkner, one of the owners. He testified that he had purchased these seven lots separately, but at the time the residence was on the property, that is on lots 19 and 20; that there is a fence along Main street, Elm street, and the alley, which incloses all of the lots; that there is no fence separating the 25-foot lot on the corner from the rest of the property; that this lot is used in connection with his home; that he has a kitchen garden on the back end and shade trees on the lot used in connection with his yard; that he owns it all as a residence property. The line between the respective lots has never been recognized or preserved, and the property is used as one entire boundary. Almost the exact situation appeared in Davis & Co. v. McDonald, 200 Ky. 828, 255 S. W. 833, and in Pursiful v. City of Harlan, 222 Ky. 658, 1 S. W. (2d) 1043. In Fischer v. City of Covington, 155 Ky. 290, 159 S. W. 941, and City of Mt. Sterling v. Bishop, 228 Ky. 529, 15 S. W. (2d) 416, the contention for a consideration of separate parcels was more substantial and reasonable than in either of those cases or this one. In each of these cases it was held that the entire boundary should be considered as a unit for purposes of street assessment.

Judge Faulkner valued his residence at $4,500, and the lots at $25 to $30 a front foot, or from $4,375 to $5,250—a total value of $8,875 to $9,750. The East Main street assessment against the entire property was $2,457.34. Adding the accepted assessment on account of Elm street, $829.46, we have $3,286.80. Five-sevenths of the cost of the culvert, $202.73, added would make the combined assessments, $3,489.53, which is less than 50 per cent. of the lowest estimate of value. The court therefore erred in relieving these appellees (the Faulkners) of their proportionate cost of the culvert.

As to appellees Adams and Combs, owning property on the two corners of Elm and Maple streets, no contention is made as to the combined assessments for Elm and Maple streets exceeding the lawful limit. The only issue made here by the city against them is respecting the relief of their property of two-sevenths of the culvert, which has been disposed of.

It follows, therefore, that the court erred only in enjoining the levy and collection of any part of the assessment against the Faulkner property, and that the five-sevenths cost of the construction of Elm street culvert is chargeable to it.

As to the appellees H. C. Faulkner and W. E. Faulkner, the judgment is reversed, with directions to enter an order assessing the property with the proportional part of the cost of the culvert. In all other respects the judgment is affirmed.

Reference is made to the companion case of Kelly v. Adams, etc., 229 Ky. 604, 17 S. W. (2d) 706, relating to the penalties and interest charges.